THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TERRANCE JOHNSON, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>CARPENTERS OF WESTERN WASHINGTON BOARD OF TRUSTEES, *et al.*,<br><br>    Defendants. | CASE NO. C22-1079-JCC<br><br>ORDER |

This matter comes before the Court on Defendant Callan LLC's Motion to Dismiss (Dkt. No. 113), and Defendants Carpenters of Western Washington Board of Trustees, Gerald Auvil, Noe Castillo, Ken Ervin, Jeff Foushee, Kurt Hildebrand, Steve Hoffmann, Martin Holberg, Dan Hutchins, Ryan Hyke, Andrew Ledbetter, Ron Montoya, Tim O'Neill, Jim Osborne, Doug Peterson, Rick Poitras, Danny Robins, Evelyn Shapiro, Bob Susee, Jeff Thorson, Doug Tweedy, and Wilf Wainhouse's Motion to Dismiss. (Dkt. No. 116.) Having thoroughly considered the briefing, the relevant record, and finding oral argument unnecessary, the Court GRANTS both motions (Dkt. Nos. 113, 116) for the reasons explained herein.

I.  BACKGROUND

Plaintiffs filed this putative class action—under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1000, *et seq*. ("ERISA")—on behalf of union

carpenters in Washington, Idaho, Montana, and Wyoming, who were automatically enrolled in two distinct collectively bargained retirement plans: the (1) Carpenters Individual Account Pension Plan of Western Washington ("the Contribution Plan"), and the (2) Carpenters Retirement Plan of Western Washington ("the Benefit Plan") (collectively, "the Plans"). (Dkt. No. 82 at 9–10.) Defendant Carpenters of Western Washington Board of Trustees ("the Board") and its financial advisor, Defendant Callan LLC managed the Plans. (*Id*. at 12, 16.) During the relevant time period, the individually named Defendants allegedly served on the Board. (*Id.* at 15.) Those persons, along with the Board and Callan LLC, are collectively "the Defendants" in this matter.

Plaintiffs claim Defendants mismanaged the Plans by investing in highly speculative indexes, which incurred over $250 million in losses. (Dkt. No. 82 at 5–9.) These funds, in turn, were managed by non-party, Allianz Global Investors U.S. LLC ("Allianz"), an asset management company. (*Id*. at 4.) Defendants invested nearly a fifth of the Plans' assets in two Allianz hedge funds: AllianzGI Structured Alpha 1000 Plus LLC ("1000 Plus") and AllianzGI Structured Alpha U.S. Equity 250 LLC ("Equity 250") (together, the "Funds"). (*Id*. at 5.) During the 2020 market downturn, 1000 Plus and Equity 250 lost 92% and 54% of their value, respectively. (*Id*.) 1000 Plus closed by the end of March, and the Plans liquidated their remaining assets in Equity 250 by early April. (*Id*. at 6.) Following the crash, the Board filed a civil suit against Allianz and received $110,390,267 from a settlement agreement in 2022. (Dkt. No. 82 at 51.) Plaintiffs allege this represents "less than 45% of the Plans' losses." (*Id*.)

Plaintiffs filed this suit alleging Defendants breached their duty of prudence under 29 U.S.C. § 1104. (Dkt. No. 82 at 56.) Alternatively, Plaintiffs allege that Defendant Callan breached its common law fiduciary duty. (*Id*. at 58.) Also, in the alternative, Plaintiffs allege that Defendant Callan breached its common law duty of due care. (*Id*. at 59.) Defendants move to dismiss all claims. (Dkt. Nos. 113, 116.)

## II. DISCUSSION

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed if the Court lacks subject matter jurisdiction, which includes the plaintiff's lack of standing. If the plaintiff lacks standing, then this Court lacks subject matter jurisdiction, and the case must be dismissed. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998). To have standing, a plaintiff must have suffered an injury in fact that is concrete and particularized and that is fairly traceable to the challenged actions of the defendant. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "[A] plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). ERISA plan beneficiaries suing on behalf of a plan must still establish Article III standing on an individualized basis. *See, e.g., Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1127 (9th Cir. 2006). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016).

A Rule 12(b)(1) jurisdictional challenge may be facial or factual. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When resolving a factual challenge, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgement. *See Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016.) In evaluating the evidence, the court "need not presume the truthfulness of the plaintiffs' allegations." *Id*. at 517. However, any factual dispute "must be resolved in favor of Plaintiffs." *Id*.

### B. Discussion

Plaintiffs claim injury of nearly $250 million during the March 2020 market crash. (Dkt. No. 82 at 14.) Defendants bring a factual challenge to this claim. (Dkt. Nos. 113 at 16–19; 116 at 14–16.) In evaluating the factual challenge, the Court "need not presume the truthfulness of the plaintiffs' allegations." *Edison*, 822 F.3d at 517.

According to Plaintiffs' own admission, following the crash, the Board "invested the remaining assets . . . in a Russell 1000 Index Fund[.]" (Dkt. No. 82 at 14.) The Board then filed suit against Allianz, who was also under investigation from the Department of Justice ("DOJ") and the Securities Exchange Commission ("SEC"). (Dkt. No. 113 at 7.)[1] The Board's lawsuit against Allianz resolved with a $110,390,267 payout for the Plans and their members. (Dkt. No. 82 at 6.) The Plaintiffs describe this settlement as a "good first step" but assert that the settlement "represent[ed] less than 45% of the Plans' losses" and "has not made [the] Plaintiffs whole (nor even half)." (*Id.*) But this is belied by the fact that the Plans only ever lost $71,774,165 during the crash. (Dkt. No. 115 at 3.) As a result, the settlement alone represents a net gain of roughly $38.6 million, which is a 15.35% unannualized return. (*Id.*)

Once a party establishes through evidence that the plaintiff lacks standing, it "then becomes necessary for [plaintiff] to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989), *cert. denied*, 493 U.S. 993 (1989); *see also Palmason v. Weyerhaeuser Co.*, 2013 WL 4511361, slip op. at 1 (W.D. Wash. 2013) (same). Plaintiffs present a "loss of opportunity" theory to allege that the Plans "would be greater today" had Defendants chosen to invest in different funds. (Dkt. Nos. 82 at 8; 120 at 9.) As a threshold matter, this theory ignores the intervening causes of both the COVID-19 epidemic, and the

---

[1] Although these investigations were not mentioned in the Amended Complaint, a court may take judicial notice of "matters of public record" when ruling on a Rule 12(b)(6) motion, even if the material is not contained within the complaint. *See* Fed. R. Evid. 201; *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). A court may also take judicial notice of a fact "not subject to reasonable dispute" because the fact "can be accurately and readily determined." Fed. R. Evid. 201(b)(2). Such matters include court filings, such as pleadings and orders, and records of administrative bodies. *See Del Puerto Water Dist. v. U.S. Bureau of Reclamation*, 271 F. Supp. 2d 1224, 1233 (C.D. Cal. 2003). And if a party introduces part of a written statement, the opposing party may introduce any other part of that statement "that in fairness ought to be considered at the same time." Fed. R. Evid. 106.

1    fraudulent conduct of Allianz, [2] a non-party to this case. Moreover, this theory is unsupported by

2    any measurable measure metric or benchmarks,[3] and the Court will not speculate as to possible

3    harm. *See Spokeo, Inc.*, 578 U.S. at 340.

4        Alternatively, Plaintiffs allege Defendants' conduct will cause them to delay retirement

5    by "at least a year." (Dkt. No. 82 at 8) This unsupported and conclusory allegation is not

6    sufficient to confer standing. "[T]hreatened," future injury "must be certainly impending to

7    constitute injury in fact," and "allegations of possible future injury are not sufficient." *Clapper v.*

8    *Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks and citation omitted);

9    *Bova v. City of Medford*, 564 F.3d 1093, 1097 (9th Cir. 2009) (claims that the plaintiffs "may

10   delay their retirement[s]" were "not sufficiently tangible or definite" to meet the requirements for

11   standing.); *McDermott v. Potter*, 2009 WL 2971585, slip op. at 2 (W.D. Wash. 2009)

12   (allegations that "[the plaintiff's] retirement fund might be impacted" rest on "future

13   contingencies … rendering [the] claimed injury too hypothetical.").

14       Taken together, Plaintiffs fail to rebut Defendants evidence that demonstrates a lack of

15   harm. *See, e.g., St. Clair*, 880 F.2d at 201; *Palmason*, 2013 WL 4511361, slip op. at 1.

16   Accordingly, Plaintiffs have failed to demonstrate a sufficiently "concrete injury" to establish

---

[2] The SEC and DOJ investigations revealed that "Allianz had engaged in a massive and years-long scheme to defraud investors. It 'repeatedly represented to investors . . . that risk was 'continuously managed and monitored[,]' and that the Funds had a specific set of hedging positions in place to protect against an overnight or short-term equity market crash.'" (Dkt. No. 113 at 12.) In other words, Allianz concealed the potential downside risks in their portfolio to investment managers such as the Defendants. Following the investigation, Allianz pled guilty to securities fraud, and was required to pay roughly $6 billion in restitution and fines. (*Id*. at 8.)

[3] In response to the Court's order for supplemental briefing on a discrete legal issue (Dkt. No. 127), Plaintiffs put forward new arguments and an expert declaration that presumably addresses this issue for the first time. (Dkt. Nos. 128, 129) These filing are improper and the Court will not consider them.

Article III standing. *See Spokeo, Inc.*, 578 U.S. at 340 ("When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term—'real,' and not 'abstract.'").

## III. CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion to dismiss Plaintiffs' amended complaint (Dkt. No. 82) and DISMISSES Plaintiffs' amended complaint without leave to amend.[4]

DATED this 10th day of May 2023.

_____
John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[4] Whether to grant leave to amend is generally within the discretion of the district court. *In re Daisy Sys. Corp.*, 97 F.3d 1171, 1175 (9th Cir. 1996). This discretion is particularly broad where the plaintiff has previously filed an amended complaint. *Sisseton–Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Here, Plaintiffs have had two opportunities to plead their claims but have failed to sufficiently do so. Moreover, even if the Court found that the Plaintiffs have standing, which they do not, the Court would still dismiss the complaint for failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see Beldock v. Microsoft Corporations*, 2023 WL 3058016, slip op. at 3 (W.D. Wash. 2023) (collecting cases across the county rejecting breach of fiduciary duty of produce under ERISA where the plaintiffs allege nothing more than underperformance relative to other investment vehicles.")