**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 30 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| TERRANCE JOHNSON; et al.,<br><br>　　　　Plaintiffs-Appellants,<br><br>　v.<br><br>CARPENTERS OF WESTERN WASHINGTON BOARD OF TRUSTEES; et al.,<br><br>　　　　Defendants-Appellees. | No.　23-35370<br><br>D.C. No. 2:22-cv-01079-JCC<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, District Judge, Presiding

Argued and Submitted July 9, 2024
San Francisco, California

Before: FRIEDLAND, MENDOZA, and DESAI, Circuit Judges.

Terrance Johnson, Brent Yahraus, and Jacy Purkiss (collectively, "Plaintiffs") appeal the dismissal of their putative class action against the Carpenters of Western Washington Board of Trustees (the "Board") and Callan, LLC (collectively, "Defendants"), alleging that Defendants violated their duties of

---

　　　* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

prudence under the Employee Retirement Income Security Act of 1974 ("ERISA"). We have jurisdiction under 28 U.S.C. § 1291 and review de novo the district court's order dismissing Plaintiffs' complaint. *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002); *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009). We reverse the dismissal.

    1. Plaintiffs have standing. Plaintiffs pursue a theory of relative loss, alleging that their retirement accounts would have more money in them today if Defendants had not made the challenged investments. Monetary harms "readily qualify as concrete injuries under Article III." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Although both parties agree that the retirement plans (and therefore each Plaintiff's retirement account) did not suffer an absolute loss (i.e., they have more money in them now than they did in 2014), absolute loss is not a requirement of concrete injury.[1] *See, e.g.*, *Indep. Living Ctr. of S. Cal., Inc. v. Shewry*, 543 F.3d 1050, 1053, 1065 (9th Cir. 2008) (holding that pharmacies and health care providers participating in Medi-Cal had standing to challenge a law reducing Medi-Cal payment rates by 10% on the theory that they would be "directly injured, by loss of gross income, when the ten-percent rate reduction takes effect" (internal quotation marks omitted)).

---

[1] For this reason, we need not decide whether Defendants mounted a facial or factual attack to Plaintiffs' concrete injury. Either way, all relevant facts are the same and are agreed upon by the parties.

Plaintiffs have sufficiently alleged a relative loss based on Defendants' imprudent decision to invest in two volatility hedge funds managed by Allianz Global Investors U.S. LLC ("Allianz"). Plaintiffs allege repeatedly that, "[e]ven after accounting for settlement proceeds, Plaintiffs have still lost hundreds of dollars per year in pension benefits compared to what they would have received had Defendants not breached their fiduciary duties" and that "[t]he value of [each Plaintiff's account] would be greater today had Defendants not violated ERISA." Plaintiffs also provided the Vanguard Total Bond Market Index Fund and the Vanguard Russell 1000 Index Fund as comparator investments that would have produced those higher earnings. The Complaint explains why those funds were appropriate comparators—they resemble the rest of the investments that Defendants had in their portfolio throughout the period at issue and resemble the investments that Defendants made with the same money both before and after making the challenged investments. Plaintiffs have thus sufficiently alleged that, had Defendants not made the challenged investments, Plaintiffs would have more money in their retirement accounts.

Plaintiffs have also sufficiently alleged that their injury is "'fairly traceable' to the . . . alleged misconduct, and not the result of misconduct of some third party not before the court." *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1141 (9th Cir. 2013) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Although Plaintiffs acknowledge that Allianz committed misconduct, that misconduct was neither the cause of Defendants' investments nor did it spur Defendants' choice to keep the money in those investments as long as they did. Plaintiffs allege that Allianz misrepresented the challenged investments' risk level to Defendants in marketing statements, but they also allege that the Board disclaimed having relied on any marketing statements by Allianz in deciding to invest.  Indeed, Plaintiffs allege that the Board agreed that it had read and relied on other documents, which made clear the significant risks associated with the investments.  There is also no allegation that Allianz provided any falsified data Defendants specifically—the Board did not allege as much in its complaint against Allianz, and the other documents Defendants ask us to judicially notice say only that some investors received false data.[2]

    2. Plaintiffs have also stated a claim under ERISA.[3]  Plaintiffs have

---

[2] The district court identified the COVID-19 pandemic as an intervening, independent cause of Plaintiffs' injury, but Plaintiffs allege that the pandemic was simply the trigger that revealed the alleged consequences of Defendants' actions. Plaintiffs allege that Defendants' conduct left the Plans vulnerable to a negative market event—the fact that such an event occurred, therefore, is not an independent cause, but part of the foreseeable consequences of Defendants' actions, according to Plaintiffs.

[3] Callan is a fiduciary under 29 U.S.C. § 1002(21)(A)(ii).  Although Defendants argue that Callan is a fiduciary only for decisions "within the scope of the fiduciary role," they do not argue that any of the decisions challenged in this suit were made outside of that role.  Any argument, therefore, that Callan was acting outside of the scope of its fiduciary role for the purposes of this action is forfeited.  See United States v. Dreyer, 804 F.3d 1266, 1277 (9th Cir. 2015).

sufficiently alleged that Defendants violated their duties of prudence by choosing to make the challenged investments. Plaintiffs allege that the challenged investments involved significant risks and that Defendants were aware of those risks but chose to make those investments anyway. Defendants did so even though retirement beneficiaries had no control over how their accounts were invested, each person's retirement benefits were directly affected by how the investments performed, many beneficiaries were already receiving retirement benefits (thus depending on the money in their retirement accounts in the short term), and one of the retirement plans was already underfunded. Plaintiffs also allege that the Board's stated aim was to implement an investment strategy that was "moderately conservative when compared to other plans of its type." And Plaintiffs allege that other plans of the same type did not make these investments. They also allege that, despite all of these factors, Defendants decided to invest a large portion—about one fifth—of the retirement plans' funds into these risky investments. We have held that a fiduciary violated its duty of prudence under similar circumstances, in which an investment advisor recommended investing a large portion of a retirement plan into investments that were excessively risky given the plan's conservative aims. *See Cal. Ironworkers Field Pension Trust v. Loomis Sayles & Co.*, 259 F.3d 1036, 1045 (9th Cir. 2001).

      Plaintiffs have also sufficiently alleged that Defendants violated their duties

of prudence by failing to adequately monitor the challenged investments' performance. Defendants had a "continuing duty to monitor [plan] investments and remove imprudent ones." *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015). Defendants were required to "'systematically consider all the investments of the [plan] at regular intervals' to ensure that they [were] appropriate." *Id.* at 529 (cleaned up) (quoting A. Hess, G. Bogert, & G. Bogert, Law of Trusts and Trustees § 684, pp. 147–48 (3d ed. 2009)). Plaintiffs allege that Defendants were on alert that the investments would require close monitoring that went beyond mere tracking of returns because they knew that their investments risked total loss of capital and that at least one of the investments tracked market volatility. Plaintiffs further allege that if Defendants had been monitoring the investments appropriately, they would have seen significant red flags—that the investments were tracking the market closely and bore significant risks in the case of a financial downturn—which would have caused a prudent investor to withdraw the investments.

      **REVERSED and REMANDED**.