THE HONORABLE JOHN H. CHUN

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| Terrance Johnson, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Carpenters of Western Washington Board of Trustees, et al.,<br><br>Defendants. | Case Number: 2:22-cv-01079-JHC<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**<br><br>**NOTE ON MOTION CALENDAR: OCTOBER 13, 2026** |



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

PLEASE TAKE NOTICE that on October 13, 2026, before the Honorable John H. Chun of the United States District Court for the Western District of Washington, Plaintiffs Terrance Johnson, Brent Yahraus, and Jacy Purkiss, individually and as the representatives of a class of similarly situated persons, and on behalf of the Carpenters of Western Washington Individual Account Pension Plan and the Carpenters Retirement Plan of Western Washington ("Plaintiffs"), as representatives of the proposed Settlement Classes, will and hereby do move for preliminary approval of the Parties' Class Action Settlement Agreement ("Settlement" or "Settlement Agreement").[1] This Motion for Preliminary Approval is based on this Notice and Memorandum, the Declaration of Mark E. Thomson and exhibits thereto, the Declaration of Paul B. Derby, the Declarations of each of the Plaintiffs, the arguments of counsel, and all files, records, and proceedings in this matter.

The Settlement is fair, reasonable, and adequate, and it falls within the range of possible approval. It is the result of lengthy, informed, non-collusive settlement negotiations, occurring over months and guided by a capable mediator. Moreover, the proposed Settlement Classes are appropriate for class certification under Federal Rule of Civil Procedure 23. Accordingly, Plaintiffs seek an order: (1) preliminarily approving the Settlement Agreement; (2) certifying the Settlement Classes for settlement purposes; (3) approving the proposed Settlement Notices for distribution to the Settlement Classes; (4) appointing Plaintiffs as Class Representatives; (5) appointing Plaintiffs' counsel as Class Counsel; (6) scheduling a final approval hearing; and (7) granting other relief as set forth in the Plaintiffs' accompanying proposed Preliminary Approval Order (which is also attached as an exhibit to the Settlement Agreement). As parties to the Settlement, Defendants do not oppose this Motion.[2]

---

[1] A copy of the Settlement Agreement is attached as Exhibit 1 to the Declaration of Mark E. Thomson ("*Thomson Decl.*"). Unless otherwise indicated, all capitalized terms referenced herein have the meaning attached to them in Article 1 of the Settlement Agreement.

[2] The Defendants include the Carpenters of Western Washington Board of Trustees, Callan LLC, Gerald Auvil, Noe Castillo, Ken Ervin, Jeff Foushee, Kurt Hildebrand, Steve Hoffmann, Martin Holberg, Dan Hutchins, Ryan Hyke, Andrew Ledbetter, Ron Montoya, Jim Osborne, Tim O'Neill, Doug Peterson, Rick Poitras, Danny Robins, Evelyn Shapiro, Bob Susee, Jeff Thorson, Doug Tweedy, and Wilf Wainhouse.



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

## MEMORANDUM IN SUPPORT OF MOTION

## INTRODUCTION

Plaintiffs are pleased to report that they have reached a Class Action Settlement Agreement with Defendants in this matter, which resolves Plaintiffs' putative class action claims under the Employee Retirement Income Security Act ("ERISA") relating to the Carpenters Individual Account Pension Plan of Western Washington (the "IAP") and the Carpenters Retirement Plan of Western Washington (the "Retirement Plan"). Under the terms of the Settlement, an aggregate of $9,250,000.00 will be paid into the Qualified Settlement Fund for the benefit of the Settlement Classes. $5,000,000.00 will be paid by Defendant Callan. $4,250,000.00 will be paid by the Board Defendants and/or their respective insurer(s) or Obligee(s).

This is a fair and reasonable resolution of the claims that were asserted in the action—even an excellent result given the Plans' prior recovery from Allianz and the attendant legal and collection risks of continued litigation—and the Settlement falls well within the range of possible approval. Plaintiffs have litigated this case for more than four years, including a successful appeal to the Ninth Circuit, extensive discovery, and arm's-length settlement negotiations. The proposed Settlement was the product of hard-fought litigation; was negotiated by counsel experienced in ERISA class actions; and was the product of an in-person mediation and months of further negotiations guided by a capable mediator—Gary McGowan of Houston, Texas, one of the founding partners of Susman Godfrey & McGowan, who flew into Seattle, Washington for an in-person mediation on September 29, 2025, attended by dozens of people—before settlement terms were reached. The Settlement provides for significant relief to the Settlement Classes, and the class release is narrowly tailored to the type of claims that were asserted under ERISA, related common law claims, and the factual predicates for those claims. Weighed against the risks and costs of further litigation and the range of possible outcomes, including no recovery at all, the Settlement easily satisfies the standard for preliminary approval under Rule 23(e).



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

## BACKGROUND

## I. HISTORY OF THE CASE LEADING UP TO SETTLEMENT

### A. Procedural History.

#### 1. Plaintiffs' Allegations.

Plaintiffs filed their Class Action Complaint on August 2, 2022. Dkt. 1. The case was assigned to Judge John Coughenour. Plaintiffs filed their First Amended Complaint on October 28, 2022. Dkt. 82. Plaintiffs' Complaint concerns two retirement plans: the Carpenters of Western Washington Individual Account Pension Plan (the "IAP") and the Carpenters Retirement Plan of Western Washington (the "Retirement Plan," and collectively, the "Plans"). The operative First Amended Complaint alleges that the Carpenters of Western Washington Board of Trustees and its individual trustees ("Board Defendants"), with advice from third-party investment advisor Callan LLC ("Callan," and with the Board Defendants, "Defendants," and with Plaintiffs, the "Parties"), invested nearly 20% of the Plans' assets in the Allianz Structured Alpha funds (the "Funds"), a pair of hedge funds that generated returns by investing in options and futures tied to the volatility index known as the VIX—which Plaintiffs allege was well outside of the Plans' conservative risk profile. In early 2020, the Funds suffered significant losses, causing a net loss of tens of millions of dollars.

Based on these allegations, Plaintiffs asserted ERISA violations, as well as common law claims for breach of fiduciary duty and negligence.

#### 2. Defendants' Motions to Dismiss.

On January 20, 2023, Defendants filed motions to dismiss the First Amended Complaint. Dkts. 113 & 116. After supplemental briefing, and without oral argument, the Court issued an Order on May 10, 2023, granting Defendants' motions to dismiss the operative First Amended Complaint without leave to amend. Dkt. 134. Judgment was entered in Defendants' favor the same day. Dkt. 135.

#### 3. Ninth Circuit Appeal.

Plaintiffs filed their notice of appeal from the order and judgment on May 24, 2023. Dkt.



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

136. After full briefing and oral argument, the Ninth Circuit issued a Memorandum reversing and remanding the district court's order. *Johnson v. Carpenters of W. Wash. Bd. of Trs.*, No. 23-35370 (9th Cir.), Dkt. 54-1. Defendants filed petitions for panel rehearing and rehearing en banc, *Id.* Dkts. 58-1 & 59-1, and both were denied, *id.* Dkt. 67.

**4. Further Litigation.**

On October 15, 2024, the Ninth Circuit issued its mandate. Dkt. 140. Two days later, Judge Coughenour recused himself and this case was reassigned. Dkt. 141.

After this case returned to the district court, and Defendants answered the First Amended Complaint, Dkts. 149 & 150, Callan filed a motion for judgment on the pleadings, Dkt. 158, and the Board Defendants joined in Callan's motion, Dkt. 160. On March 23, 2026, the Court granted in part and denied in part the motion for judgment on the pleadings. Dkt. 169.

Earlier in the case, Plaintiffs also opposed a motion by the Plans' trustees to seek indemnification and reimbursement of litigation costs from the Retirement Plan, Dkts. 37 & 51, and moved to strike the trustees' third-party crossclaim against the Plans, Dkt. 53.

In addition to considerable motion practice, the Parties have engaged in substantial discovery, including requests for production and voluminous document productions (including nearly 23,000 pages from Defendants), propounding and responding to interrogatories, and third-party discovery. Thomson Decl. ¶ 11.

**B. Mediation And Settlement.**

By mutual agreement, the Parties attended an in-person mediation in Seattle, Washington on September 29, 2025. *Id.* ¶ 12. This mediation was attended by dozens of persons from across the nation, including Plaintiffs' counsel, the Board Defendants and their lawyers, and representatives of Callan and its lawyers. *Id.* Further, the Parties selected an experienced, capable mediator in Gary McGowan, a founding partner of Susman Godfrey & McGowan who has been serving as a professional neutral for the past quarter century. *Id.*

While the mediation was unsuccessful on September 29, 2025, the Parties continued talking, and after months of additional settlement discussions guided by Mr. McGowan,



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

settlement terms were reached in or about mid-February 2026 between Plaintiffs and the Board Defendants, and in or about May 2026 between Plaintiffs and Callan. *Id.* ¶ 13.

## II. OVERVIEW OF THE SETTLEMENT TERMS

### A. Proposed Settlement Classes.

The Settlement Agreement calls for the certification of proposed "Settlement Classes" defined as "all Class Members of the IAP Class and Retirement Plan Class." Settlement Agreement § 1.60. The "IAP Class" is defined as "all participants and beneficiaries of the IAP at any time from August 2, 2016 to May 7, 2020, excluding the Defendants," the "IAP" being the "Carpenters Individual Account Pension Plan of Western Washington." *Id*. §§ 1.31 & 1.32. And the "Retirement Plan Class" is defined as "all participants and beneficiaries of the Retirement Plan at any time from August 2, 2016 to May 7, 2020, excluding the Defendants," the "Retirement Plan" being the "Carpenters Retirement Plan of Western Washington." *Id*. §§ 1.49 & 1.51. There are over 20,000 Retirement Plan Class Members and over 21,000 IAP Class Members. Thomson Decl. ¶ 4.

### B. Monetary Relief.

Under the Settlement, a total of $9,250,000.00 will be paid or caused to be paid by Defendants and/or their respective insurer(s) or Obligee(s)—$5,000,000.00 by Defendant Callan and $4,250,000.00 by the Board Defendants—into a common settlement fund (the "Qualified Settlement Fund"). Settlement Agreement § 4.3.1. Following any deductions for Court-approved attorneys' fees and costs, Class Representatives' compensation, and administrative expenses, the remainder of the common fund (the "Net Settlement Amount") will be distributed to the Settlement Classes. *Id*. §§ 1.34 & 5.5. This Net Settlement Amount is subject to a Plan of Allocation that distributes the money in proportion to each IAP or Retirement Plan Class Member's stake in the challenged investment, meaning each eligible Class Member will receive a payment proportionate to the size of that member's investment. *Id*. §§ 5.1–5.3.

Distribution of each Class Member's share depends on the member's Plan and distribution status. IAP Class Members who are Current Participants will have their share



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

credited automatically to their IAP accounts. *Id.* § 5.6.1. IAP Class Members who are Former Participants may elect to have their share rolled over to an individual retirement account or other eligible employer plan by submitting a Rollover Form or, absent such an election, will receive their share by check. *Id.* §§ 5.6.2 & 5.6.4. For the Retirement Plan Class, each member's share is applied as a supplemental credit to the member's accrued Sustainable Income Benefit ("SIB") Units—an adjustment to the member's benefit under the Retirement Plan itself, rather than a cash distribution. *Id.* § 5.3.3. Retirement Plan Class Members whose benefits had been fully distributed as of the Settlement's effective date instead receive a cash payment in lieu of that credit and may elect either a rollover or a check. *Id.* §§ 5.3.5 & 5.6.7. Those whose benefits are fully distributed only after the effective date receive a taxable cash payment, without a rollover option. *Id.* § 5.3.6. Under no circumstances will the settlement funds revert to Defendants. *Id.* § 5.12. Any checks that remain uncashed sixty days after issuance revert to the Qualified Settlement Fund and are then transferred to the IAP and the Retirement Plan, respectively, for the benefit of each Plan's participants. *Id.* § 5.7.1.

**C. Review By Independent Fiduciary.**

As required by ERISA, Defendants will retain an Independent Fiduciary to review the Settlement on behalf of the IAP and Retirement Plan. Settlement Agreement § 2.1; *see also* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75,632, as amended, 75 Fed. Reg. 33,830. The Parties will provide the Independent Fiduciary with sufficient information to support the Independent Fiduciary's review and evaluation. Settlement Agreement § 2.1.4. The Independent Fiduciary will provide his or her written determination to Defendants within twenty days of receiving from Class Counsel final or substantially final versions of the applications for Class Counsel's fees and costs, the Class Representatives' service awards, and administrative expenses. *Id*. § 2.1.2.

**D. Release of Claims.**

In exchange for the foregoing relief, the Settlement Classes will release Defendants and affiliated persons and entities from all claims that: (1) are raised in Plaintiffs' Complaint, or that



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

related to the same subject matters as and could have been raised in that Complaint; (2) would be barred by res judicata based upon entry of the Final Order; (3) relate to the allocation of the Qualified Settlement Fund, or (4) related to the Independent Fiduciary's approval of the Settlement unless brought solely against the Independent Fiduciary. Settlement Agreement §§ 1.47, 1.48 & 7.1.

### E. Class Notice And Settlement Administration.

Class Members will be sent a direct notice of the Settlement via U.S. Mail. Settlement Agreement § 2.4 & Ex. A. The Settlement Administrator will make all commercially reasonable efforts to locate Class Members whose mailings are returned as undeliverable. *Id*. § 2.4. Further, the Settlement Notice provides information to the Settlement Classes regarding, among other things: (1) the nature of the claims; (2) the class definition; (3) the terms of the Settlement; (4) Class Members' ability to object to the Settlement and deadline for doing so; (5) the class-wide release; (6) the identity of Class Counsel and the amount of compensation to be sought in connection with the Settlement; (7) the amount of any requested compensation for the Class Representatives; (8) the date, time, and location of the final approval hearing; and (9) Class Members' right to appear at the final approval hearing. *Id*., Ex. A.

For Class Members who would like more information, the Settlement Administrator will establish a settlement website with additional information. *Id*. § 2.6. The website will contain links to important documents in the case, including the operative First Amended Complaint, Settlement Agreement, Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Plaintiffs' Motion for Attorneys' Fees and Costs, Class Representative Service Awards and Administrative Expenses, Plaintiffs' Motion for Final Approval of Class Action Settlement, and any Court orders regarding the Settlement. *Id*. In addition, the Settlement Administrator will establish a toll-free telephone line that will enable callers to receive recorded information relating to the Settlement and speak to a live operator if necessary. *Id*.

### F. Attorneys' Fees And Expenses.

The Settlement Agreement provides that Class Counsel will file a motion for attorneys'



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

fees, costs, and administrative expenses at least 30 days before the deadline for objections to the proposed Settlement. Settlement Agreement § 6.2. Under the Settlement, Class Counsel will limit their request for attorneys' fees to no more than one-third of the Gross Settlement Amount ($3,083,33.33), plus litigation costs. *Id*. §§ 1.6, 6.1. Administrative Expenses, including the Independent Fiduciary's fee (capped at $25,000), are paid from the fund separately. *Id.* §§ 1.4, 2.1.3. In addition, the Settlement Agreement provides that service awards of up to $10,000 may be sought for the Class Representatives, subject to Court approval, to compensate them for the time, effort, and risks they assumed in connection with this action. *Id*.; *see also In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 943 (9th Cir. 2015) (explaining that service awards "are fairly typical in class action cases") (quoting *Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 958 (9th Cir. 2009)). The Settlement Agreement is not contingent upon Court approval of any fees, expenses, or Class Representatives' compensation that may be requested. Settlement Agreement § 12.3.

## ARGUMENT

### I. THE PROPOSED SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) requires judicial approval of any class action settlement. This involves a "two-step process." *Hunichen v. Atonomi LLC*, No. C19-0615-RAJ-SKV, 2021 WL 5854964, at *4 (W.D. Wash. Nov. 12, 2021). First, courts determine whether the "proposed settlement is within the range of possible approval and whether or not notice should be sent to class members," which "amounts to a finding that the terms of the proposed settlement warrant consideration by members of the class and a full examination at a final hearing." *Id.* Second, "[f]ollowing preliminary approval and notice, the Court reviews the fairness of the settlement at a final fairness hearing and, if appropriate, renders a finding that the settlement is 'fair, reasonable, and adequate.'" *Id*. (quoting Fed. R. Civ. P. 23(e)).

The determination of whether a proposed settlement is fair falls within the sound discretion of the Court. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

However, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Id.*; *see also Dunne v. Quantum Residential, Inc.*, No. 3:23-cv-05535-DGE, 2024 WL 3042835, at *2 (W.D. Wash. June 18, 2024) ("In the Ninth Circuit, judicial policy strongly favors the settlement of class actions."). Accordingly, the district court's role is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

In making its final fairness determination, the court will ultimately consider a number of factors, including, in pertinent part: (1) "the strength of plaintiffs' case"; (2) "the risk, expense, complexity, and likely duration of further litigation"; (3) "the amount offered in settlement"; (4) "the extent of discovery completed, and the stage of the proceedings"; and (5) "the experience and views of counsel." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

Consistent with the above, "[p]reliminary approval is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Dunne*, 2024 WL 3042835, at *5 (quoting *Alcala v. Meyer Logistics, Inc.*, Case No. CV 17-7211 PSG (AGRx), 2019 WL 4452961, at *4 (C.D. Cal. June 17, 2019)).

### A. The Settlement Is A Product Of Informed, Arm's Length Negotiations By Experienced Counsel, Guided By A Capable Mediator, At An Appropriate Stage Of The Litigation.

As an initial matter, "[t]he Settlement was negotiated at arm's-length, and no evidence of fraud or collusion has been presented." *In re Atossa Genetics, Inc. Sec. Litig.*, No. 13-cv-01836-RSM, 2018 WL 3546176, at *1 (W.D. Wash. July 20, 2018); *see also Ikuseghan v. Multicare Health Sys.*, No. 3:14-cv-05539-BHS, 2016 WL 3976569, at *3 (W.D. Wash. July 25, 2016)



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

("This court begins its analysis with a presumption that a class settlement is fair and should be approved if it is the product of arm's-length negotiations conducted by capable counsel with extensive experience in complex class action litigation."). The Parties reached the Settlement terms after mediation and months of further settlement negotiations facilitated by the mediator. Thomson Decl. ¶ 12.

The Parties' positions were well-informed at the time of the settlement. Before resolving the case, the Parties engaged in adversarial litigation for nearly four years, inclusive of motions to dismiss that were initially successful but reversed by the Ninth Circuit on appeal, then another round of dispositive motions, during which essentially all of the legal issues in dispute were briefed either once or twice to multiple courts. By the time of the Settlement, the Parties also had engaged in significant discovery, having exchanged tens of thousands of pages of documents. *Id.* ¶ 11.

Further, Plaintiffs were represented by experienced counsel at the bargaining table, with a track record of representing classes and success in ERISA litigation. *See* Sect. III.A.4, *infra*; *see also Britt v. Clallam Cnty. Pub. Hosp. Dist. No. 2*, No. C23-5377 MJP, 2024 WL 3924668, at *3 (W.D. Wash. Aug. 23, 2024) (approving class action settlement because class counsel was experienced in bringing similar claims); *Clemans v. New Wernar Co.*, No. 3:12-cv-05186, 2013 WL 12108739, at *3 (W.D. Wash. Nov. 22, 2013) (approving class action settlement because "Class Counsel has extensive experience in class action litigation"); *Helde v. Knight Transp., Inc.*, No. 2:12-cv-00904-RSL, 2017 WL 4701323, at *1 (W.D. Wash. Oct. 19, 2017) (approving class action settlement because it was "the result of arm's-length negotiations between experienced attorneys"). Additionally, "Class Counsel has conducted significant pre-litigation research, including reviewing" publicly available information regarding the Funds, the Plans, and the prior Allianz lawsuit, as well as documents provided by Plaintiffs. *Bowdle v. King's Seafood Co., LLC*, 2022 WL 19235264, at *6 (C.D. Cal. Oct. 19, 2022); Thomson Decl. ¶ 10. This research led to a detailed, 75-page complaint. *See* Dkt. 1. That "prelitigation research, combined with Class Counsel's extensive experience litigating [ERISA] class actions" plus "the benefit of



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

Defendants' motion to dismiss [informed] settlement discussions" here. *Bowdle*, 2022 WL 19235264, at *6.

### B. The Settlement Provides For Significant Relief.

The product of these serious, informed, and extended negotiations was a Settlement that provides significant relief to the Settlement Classes. The $9.25 million recovery is substantial. *See Randall v. Integrated Commc'n Serv., Inc*., No. 3:20-cv-05438-DGE, 2023 WL 5743133, at *2 (W.D. Wash. Sept. 6, 2023) (granting preliminary approval of class settlement because it "falls within the range of possible approval"); *In re Google Referrer Header Privacy Litig*., 87 F. Supp. 3d 1122, 1133 (N.D. Cal. 2015) ("The court's role is not to advocate for any particular relief, but instead to determine whether the settlement terms fall within a reasonable range of possible settlements, giving 'proper deference to the private consensual decision of the parties' to reach an agreement rather than continue litigating.") (quoting *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th Cir. 1998)). Although Plaintiffs *potentially* could have recovered even greater damages at trial, "[i]t is well-settled law that a . . . settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000), as amended (June 19, 2000) (quoting *Officers for Justice*, 688 F.2d at 628.

Plaintiffs calculated the maximum possible recovery in this case as $108,057,973. Dkt. 129 ¶ 19. The aggregate $9.25 million settlement amounts to 8.5% of that ceiling. This recovery is within the range of possible approval by the Court. *See In re Omnivision Techs., Inc*., 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (finding settlement of $13.75 million, or just over 9% of maximum potential recovery of $151.8 million, was reasonable); *In re Newbridge Networks Sec. Litig*., 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("[A]n agreement that secures roughly six to twelve percent of a potential recovery . . . seems to be within the targeted range of reasonableness."); *In re Rite Aid Corp. Sec. Litig*., 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"). In fact, courts in the Ninth Circuit routinely



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

approve settlements that recover much smaller percentages of the maximum possible damages. *See, e.g.*, *In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453–54 (C.D. Cal. 2014) (granting final approval of a settlement recovering 3% of maximum damages); *Reed v. 1-800 Contacts, Inc.*, No. 12-cv-02359 JM (BGS), 2014 WL 29011, at *6 (S.D. Cal. Jan. 2, 2014) (granting final approval of settlement recovering about 2% of maximum damages); *In re LDK Solar Sec. Litig.*, No. C 07-5182 WHA, 2010 WL 3001384, at *2 (N.D. Cal. July 29, 2010) (granting final approval of a settlement recovering about 5% of damages).

Moreover, the potential for a larger recovery here was tempered by two factors. First, the damages sought by Plaintiffs created significant collection risk in the case of a judgment. Thomson Decl. ¶ 14. Second, as Defendants emphasized in seeking dismissal of this case, the Plans had already recovered their absolute losses from the challenged events from third-party Allianz, meaning any judgment for Plaintiffs in this lawsuit would represent additional profits for the Plans. *Id.* ¶ 15.

### C. Plaintiffs And The Settlement Classes Faced Significant Risks And Expenses In Connection With The Litigation.

The aggregate $9.25 million Settlement that was negotiated over many months represents a reasonable compromise in light of the risks and expense of continued litigation. *See Schneider v. Wilcox Farms, Inc.*, No. 07-cv-01160-JLR, 2009 WL 10726662, at *3 (W.D. Wash. Jan. 12, 2009) ("The Settlement is fair and reasonable in light of the relief obtained by plaintiffs and the risks inherent in further litigation."). Were this case to proceed to trial, Defendants would no doubt argue, as they did in the motions to dismiss that were granted in the first instance, that Plaintiffs' arguments relating to investment performance are in hindsight only, that the investment loss was due to the fraud of third-party Allianz and not Defendants' conduct, and that Plaintiffs and the Plans suffered no damages for having already realized a net recovery after the settlement payment from Allianz. Although Plaintiffs believe they could overcome any such criticism on the particular facts of this case, they do recognize the risks posed by these



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

arguments. *See, e.g.*, *Wright v. Oregon Metallurgical Corp*., 360 F.3d 1090, 1099 (9th Cir. 2004) (rejecting plaintiffs' arguments that fiduciaries acted imprudently, noting they were made "with 20-20 hindsight"). Moreover, even if Plaintiffs prevailed in this Court, it is likely that Defendants would appeal to the Ninth Circuit, the second such appeal in this case. Thus, the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement." *In re Portal Software, Inc. Sec. Litig*., No. C-03-5138 VRW, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007).

Moreover, even if Plaintiffs had prevailed at every stage of the litigation (i.e., defeated summary judgment motions, established liability at trial despite Allianz's role in running the Funds, and proven a loss despite the net recovery to date after the settlement payments from Allianz), which they believe they could have, the Court still could have accepted a wide range of damages. *See Munoz v. Giumarra Vineyards Corp*., No. 1:09-cv-00703-AWI-JLT, 2017 WL 2665075, at *9 (E.D. Cal. June 21, 2017) ("Approval of settlement is 'preferable to lengthy and expensive litigation with uncertain results.'") (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 529 (C.D. Cal. 2004)); *In re NVIDIA Corp. Deriv. Litig*., No. C-06-06110-SBA (JCS), 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008) ("[E]ven a favorable judgment at trial may face post-trial motions and even if liability was established, the amount of recoverable damages is uncertain."). Damages calculations related to retirement plan investments are the subject of significant uncertainty. *See Tussey v. ABB, Inc*., 746 F.3d 327, 338 (8th Cir. 2014) (instructing district court to "reevaluate its method of calculating the damage award, if any, for the participants' investment selection . . . claims."). In fact, challenges by Defendants to whether and to what extent the Plans were damaged were a primary focus of Defendants' motions to dismiss. This further supports approval of the settlement in this case. *See Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *7 (N.D. Cal. Apr. 1, 2011) (noting the expense, delay, and risks associated with expert challenges and damage calculations supported settlement approval).

At a minimum, continuing the litigation would have resulted in complex, costly, and



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

lengthy proceedings before this Court and likely the Ninth Circuit, which would have sizably delayed any relief to the Class Members (at best), and might have resulted in no relief at all. On many occasions it was nearly or more than a decade before class action lawsuits were resolved, by settlement or judgment through appeal. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-1827 SI, 2016 WL 7626230 (N.D. Cal. Jan. 22, 2016); *In re Cendant Corp. Sec. Litig.*, 569 F. Supp. 2d 440 (D.N.J. 2008). And aside from the time and delay, the costs associated with continued litigation, especially the considerable expert cost in cases like this involving a standard of care, would have been considerable.

Given the substantial risks, costs, and delay that Plaintiffs and the Settlement Classes faced absent a settlement, the relief that was negotiated falls within the range of possible approval.

**D. The Settlement Contains No Obvious Deficiencies.**

The Settlement has no obvious deficiencies. The Released Parties are clearly defined, and the scope of the release is narrowly tailored to matters relating to this litigation and/or settlement. Settlement Agreement §§ 1.47, 1.48 & 7.1. Further, the class definition is based on clear, objective criteria that allow Class Members to be easily identified. *Id*. §§ 1.31, 1.32, 1.49 & 1.51.

Further, the Settlement is not contingent on the Court's approval of attorneys' fees or Class Representative Service Awards in any particular amount (or in any amount at all). *Id*. § 12.3. Class Counsel also fully supports the Settlement and believes it is fair, as does each of the Plaintiffs. Thomson Decl. ¶ 14.

**E. The Settlement Terms Treat All Class Members Fairly And Equitably.**

Finally, the Settlement treats all Class Members fairly. The Plan of Allocation first divides the Net Settlement Amount between the two Settlement Classes in proportion to each Plan's investment in the challenged funds as of December 31, 2019, shortly before the funds imploded. Settlement Agreement § 5.1. Within the IAP Class, each member's share is proportional to that member's own IAP account balance as of the same date. *Id*. § 5.2. Within the Retirement Plan Class, each member's share is proportional to that member's accrued SIB



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

Units as of that date. *Id*. § 5.3. Because both the division between the Classes and the allocation within each Class track the relative size of each member's investment in the funds that gave rise to the alleged losses, the Plan of Allocation distributes the recovery in proportion to each member's stake in the challenged investments.

## II. THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED

In addition to reviewing the substance of the Settlement Agreement, the Court must ensure that notice is sent in a reasonable manner to all Class Members who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notice to all Class Members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B).

That is precisely the type of notice proposed here. The Settlement Agreement provides for direct notice of the Settlement to the Settlement Classes via first-class mail, to the extent that a physical address is available. Settlement Agreement § 2.2.4. This type of notice is presumptively reasonable. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Moreover, if any Class Member's notice is returned as undeliverable, the Settlement Administrator will use commercially reasonable means (such as use of a forwarding address or skip-trace) to update the Class Member's address and re-mail the notice. Settlement Agreement §§ 2.2.4 & 2.4.

The content of the proposed Settlement Notice is also reasonable. *See* Settlement Agreement, Ex. A. Among other things, in substantial detail, the Settlement Notice describes the nature of the Class Action, summarizes the Settlement terms, provides notice of the Fairness Hearing, describes the means by which a Class Member can object, and indicates the proposed attorneys' fees and costs to be paid to Plaintiffs' counsel. *Id*. This is ample to satisfy Rule 23 and due process.[3] *Halter v. Providence Health & Servs*., No. 2:25-cv-00210-JNW, 2026 WL 1601689, at *3 (W.D. Wash. June 4, 2026) (approving class notice with similar content); *Booth v. Appstack, Inc*., No. 2:13-cv-01533-JLR, 2016 WL 7851472, at *2 (W.D. Wash. Aug. 29,

[3] Because the Settlement Classes fall under Federal Rule of Civil Procedure 23(b)(1) rather than 23(b)(3), the Settlement Notice need not contain information on how Class Members can opt out of the Settlement.



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

2016) (finding that notice with similar content "fully complies with the requirements of Rule 23 and due process"); *Scott v. United Servs. Auto. Ass'n*, No. C11-1422-JCC, 2013 WL 12251170, at *4 (W.D. Wash. Jan. 7, 2013) (approving class notice with similar content).

To the extent that Class Members have any questions, they can obtain additional information through the settlement website and toll-free telephone support line. Settlement Agreement § 2.6. This notice program is more than sufficient to meet the requirements of Rule 23 and due process, and should be approved. *Nichols v. GEICO Gen. Ins. Co*., No. 2:18-cv-01253-TL, 2026 WL 710137, at *2 (W.D. Wash. Mar. 13, 2026) (finding similar class notice to be "reasonable, that it constitutes due, adequate, and sufficient notice to those persons entitled to receive notice and that it meets the requirements of due process and Civil Rule 23"); *Stedman v. Progressive Direct Ins. Co*., No. 2:18-cv-1254, 2023 WL 5974865, at *6 (W.D. Wash. Sept. 14, 2023) (same); *Brotherson v. Professional Basketball Club, L.L.C*., No. C07-1787 RAJ, 2010 WL 11523895, at *2 (W.D. Wash. Feb. 12, 2010) (same).

## III. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASSES

Rule 23(a) sets forth four threshold requirements applicable to all class actions: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). The proposed classes satisfy each of these requirements.

### A. The Proposed Classes Satisfy Rule 23(a).

#### 1. Numerosity.

Numerosity requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x. 646, 651 (9th Cir. 2010); *see also Rodriguez v. Bostock*, 349 F.R.D. 333, 352 (W.D. Wash. 2025) (same, quoting *Wagafe v. Trump*, No. CIV17-0094-RAJ, 2017 WL 2671254, at *12 (W.D. Wash. June 21, 2017)). Here, there are over 21,000 IAP Class Members and over 20,000 Retirement Plan Class Members. Thomson Decl. ¶ 4.



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

**2. Commonality.**

Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is construed "permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id*. "[A]ll that Rule 23(a)(2) requires is 'a single significant question of law or fact.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (emphasis omitted, quoting *Mazza v. American Honda Motor Co*., 666 F.3d 581, 589 (9th Cir. 2012)); *accord Dukes*, 564 U.S. at 359. Thus, commonality is satisfied where there is a common question as to "whether a defendant's course of conduct is in its broad outlines actionable." *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

In an ERISA breach of fiduciary duty case such as this, "the common focus is on the conduct of *Defendants*: whether they breached their fiduciary duties to the Plan as a whole by paying excessive fees, [and] whether they made imprudent investment decisions." *Kanawi v. Bechtel Corp*., 254 F.R.D. 102, 109 (N.D. Cal. 2008). "In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." *In re Glob. Crossing Sec. & ERISA Litig*., 225 F.R.D. 436, 452 (S.D.N.Y. 2004) (citation omitted). Here, the common questions include:

- Whether Defendants improperly selected and retained imprudent investments in the Plans;
- Whether Defendants failed to prudently monitor the investments in the Plans;
- Whether Defendants exercised the requisite care, skill, prudence, and diligence in administering the Plans; and
- Whether Defendants acted solely in the interest of the Plans' participants.

In other ERISA cases challenging the prudence of plan investments, courts routinely find



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

that the commonality requirements are satisfied based on questions such as these. *See, e.g.*, *Coppel v. SeaWorld Parks & Entm't, Inc.*, 347 F.R.D. 338, 356 (S.D. Cal. 2024) (finding commonality on questions related to administration of plan investments); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-cv-1614-JLS-JCGx, 2017 WL 2655678, at *4 (C.D. Cal. June 15, 2017) (finding commonality satisfied in action challenging selection and retention of proprietary investments in 401(k) plan); *In re Northrop Grumman Corp. ERISA Litig.*, No. CV 06-06213 MMM (JCx), 2011 WL 3505264, at *8 (C.D. Cal. Mar. 29, 2011) (noting common questions regarding "whether the Plans' fees and expenses are reasonable; [and] whether the investment options selected by Defendants have been prudent"); *Kanawi*, 254 F.R.D. at 108 (identifying numerous common questions, including whether the Plan's underperformance impaired the assets of the Plan's trust and whether, "in administering the Plan, Defendants exercised the requisite care, skill, prudence and diligence").

**3. Typicality.**

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement "tend[s] to merge" with the commonality requirement. *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "Like commonality, typicality is a 'permissive' standard and 'the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff.'" *Kanawi*, 254 F.R.D. at 110 (quoting *Simpson v. Fireman's Fund Ins. Co*., 231 F.R.D. 391, 396 (N.D. Cal. 2005)). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Thus, the typicality requirement is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009) (internal quotations and citation omitted).

The Class Representatives are typical of the class because they raise common legal claims arising from a common course of conduct by Defendants. To the extent that Defendants



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

lacked a prudent process for managing or monitoring the Plans' investments, that process was defective with respect to the Plans as a whole.[4] Thus, typicality is satisfied. *See Kanawi*, 254 F.R.D. at 110 (typicality present where "Plaintiffs allege that Defendants breached their fiduciary duties against the Plan as a whole and against every participant in the Plan" and where "Plaintiffs assert the same injury arising from the same course of conduct including, inter alia, allowing excessive fees … and maintaining imprudent investments"); *Urakhchin*, 2017 WL 2655678, at *5–6.

**4. Adequacy.**

Rule 23(a)(4) requires "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy is met if (1) there are no conflicts of interest between the named plaintiffs and their counsel, on the one hand, and the proposed class, on the other; and (2) the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020. Both of these requirements are satisfied here.

First, the Class Representatives are not aware of any conflicts of interest between themselves and other Plan participants, and they have vowed to faithfully represent the interests of other Class Members. Thomson Decl. ¶ 4; Declaration of Terrance Johnson in Support of Preliminary Approval ¶ 5; Declaration of Brent Yahraus in Support of Preliminary Approval ¶ 5; Declaration of Jacy Purkiss in Support of Preliminary Approval ¶ 5. Their interest in pursuing a recovery on behalf of the Plans is aligned with the interests of the Settlement Classes, and ERISA grants them the express right to sue on behalf of the Plans. *See* 29 U.S.C. §§ 1109(a), 1132(a).

Plaintiffs' counsel is also adequate. Class counsel is unaware of any conflicts of interest with the Settlement Classes. Thomson Decl. ¶ 4. Plaintiffs' counsel, in particular at Engstrom Lee, has extensive experience litigating class actions, including ERISA breach of fiduciary duty cases, and has been recognized as knowledgeable in this area of law. Thomson Decl. ¶¶ 18–20;

[4] Notably, "[t]hat the Plan participants may have separate individual accounts, invest in different funds, and obtain different returns on their investments (positive or negative), does not change the nature of their claims or the legal arguments they would make to prove Defendants' liability." *Urakhchin*, 2017 WL 2655678, at *5; *see also Kanawi*, 254 F.R.D. at 110.



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

Derby Decl. ¶¶ 11–13; *see also Andrews v. Wilson Elec. Servs. Corp.*, No. CV-24-00995-PHX-DJH, 2025 WL 2180656, at *5 (D. Ariz. July 29, 2025) ("Plaintiffs have retained Engstrom Lee LLC, who specializes in ERISA class actions . . . ."); *Colon v. Johnson*, No. 8:22-cv-888-TPB-TGW, 2024 WL 3315628, at *8 (M.D. Fla. May 31, 2024) ("Attorneys Carl Engstrom, Brandon McDonough, and Mark Thomson from Engstrom Lee are also highly experienced in litigating ERISA cases."); *In re Pacquiao-Mayweather Boxing Match Pay-Per-View Litig.*, 942 F.3d 1160 (9th Cir. 2019) (Skiermont Derby appointed local counsel in multi-district class action litigation).

**B. The Proposed Classes Satisfy Rule 23(b)(1).**

In addition to meeting the requirements of Rule 23(a), the proposed classes must satisfy one of the subparts of Rule 23(b). Here, the Settlement Classes satisfy Rule 23(b)(1). A class may be certified under Rule 23(b)(1) if prosecuting separate actions by individual class members would create a risk of:

(A) Inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1). "Most ERISA class action cases are certified under Rule 23(b)(1)." *In re Northrop Grumman Corp.*, 2011 WL 3505264, at *15 (quoting *Kanawi*, 254 F.R.D. at 111); *see also McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Tr.*, 268 F.R.D. 670, 677–78 (W.D. Wash. 2010) (ERISA class actions are appropriately certified under Rule 23(b)(1) (citing various authorities)); *Klawonn v. Board of Directors for Motion Picture Industry Pension Plans*, No. CV 20-9194-DMG (ASx), 2024 WL 653398, at *7 (C.D. Cal. Jan. 18, 2024) ("ERISA class action cases are typically certified under Rule 23(b)(1)."). Indeed, "ERISA fiduciary litigation … presents a paradigmatic example of a (b)(1) class." *Kanawi*, 254 F.R.D. at 112 (internal brackets and citation omitted).



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

Here, individual adjudications would establish incompatible standards of conduct for the Defendants. Since the fiduciary duties imposed by ERISA are "duties with respect to a plan," *see* 29 U.S.C. § 1104, separate actions by individual Plan participants could lead to differing, incompatible rulings with regard to Plan management or the restoration of Plan assets. *See Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 577 (D. Minn. 2014) ("[S]eparate lawsuits by various individual Plan participants to vindicate the rights of the Plan could establish incompatible standards to govern Defendants' conduct, such as . . . determinations of differing 'prudent alternatives' against which to measure the proprietary investments, or an order that Defendants be removed as fiduciaries."). "In light of this risk, Plaintiffs have successfully satisfied the requirements of Rule 23(b)(1)(A)." *Kanawi*, 254 F.R.D. at 111.

For similar reasons, class certification is appropriate under Rule 23(b)(1)(B). Any determination of Defendants' liability would necessarily adhere to the Plans as a whole and would, therefore, be dispositive of, impair, or impede the interests of other Plan participants. For this reason, the Advisory Committee Notes to Rule 23 expressly recognize that class certification is appropriate under Rule 23(b)(1)(B) in "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P. 23, Advisory Committee's Note to Subd. (b)(1), Cl. (B).

As the Supreme Court has implicitly recognized, breach of fiduciary duties cases under ERISA are "classic examples" of matters appropriate for Rule 23(b)(1)(B) class certification. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833–34 (1999); *see also Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 15 Civ. 9936 (LGS), 2017 WL 3868803, at *8 (S.D.N.Y. Sept. 5, 2017) ("Plaintiffs' action is akin to the 'classic' example contemplated by the Supreme Court in *Ortiz*: Plaintiffs allege Defendants' conduct affected members of a class of thousands similarly as each were exposed to the same investment options and seek to restore losses to the Plan's assets, which are comprised of the individual accounts that allegedly paid excessive fees."). Consistent with this authority, the overwhelming majority of courts have recognized that cases like this are



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

properly certified under Rule 23(b)(1)(B). *See, e.g.*, *Grabek v. Northrop Grumman Corp.*, 346 F. App'x 151, 153 (9th Cir. 2009) (noting that action for breach of fiduciary duties under ERISA "appears to meet the requirements of Fed.R.Civ.P 23(a) and (b)," since breaches of trust "similarly affecting members of a large class of beneficiaries" are classic examples of cases appropriate for Rule 23(b)(1)(B) class treatment); *Imber v. Lackey*, No. 1:22-cv-00004-HBK, 2025 WL 2687358, at *11 (E.D. Cal. Sept. 19, 2025) (finding appropriate certification of ERISA class under Rule 23(b)(1)(B)); *Coppel*, 347 F.R.D. at 368 ("Given the nature of Plaintiffs' ERISA claims, certification under either Rule 23(b)(1)(A) or (B) is appropriate."); *McCluskey*, 268 F.R.D. at 678 (certifying ERISA fiduciary duty class under Rule 23(b)(1)(B)); *Urakhchin*, 2017 WL 2655678, at *8 (same); *In re Northrop Grumman*, 2011 WL 3505264, at *17–18 (same). Accordingly, the Settlement Classes should be certified.

**CONCLUSION**

For the foregoing reasons, the Court should enter an Order: (1) preliminarily approving the Parties' Settlement Agreement; (2) certifying the Settlement Classes for settlement purposes; (3) approving the proposed Settlement Notice for distribution to the Settlement Classes; (4) appointing Plaintiffs as Class Representatives; (5) appointing Plaintiffs' counsel as Class Counsel; (6) scheduling a final approval hearing; and (7) granting other relief as set forth in Plaintiffs' accompanying proposed Preliminary Approval Order.

Dated: October 13, 2026

/s/ Mark E. Thomson
Mark E. Thomson, MN Bar No. 0398260*
Carl F. Engstrom, MN Bar No. 0396298*
**ENGSTROM LEE LLC**
323 N. Washington Ave., Suite 200
Minneapolis, MN 55401
Telephone: (612) 305-8349
mthomson@engstromlee.com
cengstrom@engstromlee.com
*Appearing pro hac vice

Paul B. Derby, CA Bar No. 211352*
Hajir Ardebili, CA Bar No. 224624*
John J. O'Kane IV, CA Bar No. 268632*
**SKIERMONT DERBY LLP**

633 West Fifth Street , Suite 5800
Los Angeles, CA 90071
Telephone: 213-788-4500
pderby@skiermontderby.com
hardebili@skiermontderby.com
jokane@skiermontderby.com
*Appearing pro hac vice

Marie E. Casciari, WSBA No. 58223
**DEBOFSKY LAW, LTD.**
3101 Western Ave., Suite 350
Seattle, WA 98121
Telephone: (206) 333-2696
mcasciari@debofsky.com

*Counsel for Plaintiffs*

**LOCAL RULE 7(E)(6) COMPLIANCE**

I certify that this memorandum contains 7,478 words, in compliance with the Local Civil Rules.

Dated: October 13, 2026

/s/Mark E. Thomson
Mark E. Thomson



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349