# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# SEATTLE DIVISION

| | | |
|---|---|---|
| Terrance Johnson, et al.<br><br>Plaintiffs,<br><br>v.<br><br>Carpenters of Western Washington Board of Trustees, et al.,<br><br>Defendants. | ) | **No. 2:22-cv-01079-JHC** |

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement (the "Settlement Agreement") is entered into between and among the Class Representatives, all Class Members, and the Defendants, as defined herein.

NOW, THEREFORE, without any admission or concession on the part of the Class Representatives of any lack of merit of the Class Action, and without any admission or concession on the part of Defendants as to the merits of the allegations or claims asserted in the Class Action, it is hereby STIPULATED AND AGREED, by and among the Settling Parties (also referred to as "Parties") to this Settlement Agreement, through their respective attorneys, subject to approval of the Court pursuant to Federal Rule of Civil Procedure 23(e), in consideration of the benefits flowing to the Settling Parties hereto from the Settlement Agreement, that all Released Claims as against the Released Parties shall be compromised, settled, released, and dismissed with prejudice, upon and subject to the following terms and conditions:

## 1. ARTICLE 1 – DEFINITIONS

1.1. As used in this Settlement Agreement and the Exhibits hereto, unless otherwise defined, the following terms have the meanings specified below:

1.2. "Action" or "Class Action" means the class action lawsuit of *Johnson et al. v. Carpenters of Western Washington Board of Trustees et al.*, 2:22-cv-01079-JHC, in the United States District Court for the Western District of Washington.

1.3. “Active Account” means an individual investment account in the IAP with a balance greater than $0 as of the time of calculation of the IAP Final Entitlement Amount defined in the Plan of Allocation.

1.4. “Administrative Expenses” means expenses incurred in the administration of this Settlement Agreement, including (a) all fees, expenses, and costs associated with providing the Settlement Notice to the Class Members, including but not limited to the fees of the Plans’ Recordkeeper(s) to identify the names and mailing addresses of Class Members; (b) related tax expenses (including taxes and tax expenses as described in Section 4.4); (c) all expenses and costs associated with the distribution of funds under the Plan of Allocation, including but not limited to the fees of the Plans’ Recordkeeper(s) associated with implementing this Settlement Agreement, facilitating the distribution of funds under the Plan of Allocation, gathering the data necessary to prepare the Plan of Allocation, and performing the calculations pursuant to the Plan of Allocation; (d) all fees and expenses of the Settlement Administrator and Escrow Agent; (e) all fees and expenses of the Independent Fiduciary, not to exceed $25,000; and (f) all fees, expenses, and costs associated with providing CAFA Notices. Excluded from Administrative Expenses are the Settling Parties’ respective legal fees and expenses. Administrative Expenses shall be paid from the Gross Settlement Amount.

1.5. “Alternate Payee” means a Person other than a participant or Beneficiary in the Plans who is entitled to a benefit under the Plans as a result of a QDRO.

1.6. “Attorneys’ Fees and Costs” means the amount awarded by the Court as compensation for the services provided by Class Counsel. The amount of attorneys’ fees for Class Counsel shall not exceed $3,083,333.33, which shall be recovered from the Gross Settlement Amount. Class Counsel also will seek reimbursement for all litigation costs and expenses advanced and carried by Class Counsel for the duration of this Class Action, including the pre-litigation investigation period, which also shall be recovered from the Gross Settlement Amount.

1.7. “Authorized Administrator” means any entity, other than the Recordkeeper(s), with appropriate administrative authority under the Plans.

1.8. “Beneficiary” means any individual, trust, estate, or other recipient entitled to receive death benefits payable under the Plans, on either a primary or contingent basis, other than an Alternate Payee.

1.9. “Board Defendants” means the Carpenters of Western Washington Board of Trustees, Gerald Auvil, Noe Castillo, Ken Ervin, Jeff Foushee, Kurt Hildebrand, Steve Hoffmann, Martin Holberg, Dan Hutchins, Ryan Hyke, Andrew Ledbetter, Ron Montoya, Jim Osborne, Tim O’Neill, Doug Peterson, Rick Poitras, Danny Robins, Evelyn Shapiro, Bob Susee, Jeff Thorson, Doug Tweedy, and Wilf Wainhouse.

1.10. "CAFA" means the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711-1715.

1.11. "CAFA Notice" means notice of this Settlement to the appropriate federal and state officials pursuant to CAFA.

1.12. "Callan" means Callan LLC.

1.13. "Class Representative Service Awards" means the monetary amount awarded by the Court to each Class Representative in recognition of the Class Representative's assistance in the prosecution of this Class Action, for which Class Counsel may seek an amount not exceeding $10,000.00 per Class Representative payable from the Gross Settlement Amount.

1.14. "Class Counsel" means Engstrom Lee LLC and Skiermont Derby LLP.

1.15. "Class Members" or "Settlement Class Members" means all individuals in the Settlement Classes, including the Class Representatives.

1.16. "Class Period" means the period from August 2, 2016 to May 7, 2020.

1.17. "Class Representatives" means Terrance Johnson, Brent Yahraus, and Jacy Purkiss.

1.18. "Court" means the United States District Court for the Western District of Washington.

1.19. "Current Participant" means a member of the IAP Class who has an Active Account as of the time of calculation of the IAP Final Entitlement Amount defined in the Plan of Allocation.

1.20. "Defendants" means the Board Defendants and Callan.

1.21. "Defense Counsel" means DLA Piper LLP (US), Gordon Rees Scully Mansukhani, LLP, and Groom Law Group, Chartered.

1.22. "Escrow Agent" means the Huntington National Bank.

1.23. "ERISA" means the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq*.

1.24. "Fairness Hearing" means the hearing scheduled by the Court to consider (a) any objections by Class Members to the Settlement; (b) Class Counsel's petition for Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses; and (c) whether to finally approve the Settlement under Fed. R. Civ. P. 23(e). The Parties agree that, subject to Court approval, the Fairness Hearing may be conducted telephonically or via videoconferencing.

1.25. “Final” means, with respect to any judicial ruling, order, or judgment, that the period for any motions for reconsideration, motions for rehearing, appeals, petitions for certiorari, or the like (“Review Proceeding”) has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that it has been fully and finally resolved, either by court action or by voluntary action of any party, without any possibility of a reversal, vacatur, or modification of any judicial ruling, order, or judgment, including the exhaustion of all proceedings in any remand or subsequent appeal and remand. The Settling Parties agree that absent an appeal or other attempted Review Proceeding, the period after which the Final Order becomes Final is thirty-one (31) calendar days after its entry by the Court.

1.26. “Final Order” means the entry of the order and final judgment approving the Settlement Agreement, implementing the terms of this Settlement Agreement, and dismissing the Class Action with prejudice, to be proposed by the Settling Parties for approval by the Court, in substantially the form attached as Exhibit D hereto.

1.27. “First Amended Complaint” means the First Amended Complaint filed in this class action on October 28, 2022 at Dkt. 82.

1.28. “Former Participant” means a member of the IAP Class who does not have an Active Account as of the time of calculation of the IAP Final Entitlement Amount defined in the Plan of Allocation.

1.29. “Fully-Distributed Retirement Plan Class Member” means a member of the Retirement Plan Class who had a SIB Unit accrual greater than zero as of the SIB Valuation Date but whose Retirement Plan benefit has been fully distributed as of the Settlement Effective Date.

1.30. “Gross Settlement Amount” means the sum of nine million and two hundred and fifty thousand dollars ($9,250,000), contributed or caused to be contributed to the Qualified Settlement Fund in accordance with Article 5, by Defendants and/or their fiduciary liability insurer(s) or Obligee(s). Five million dollars ($5,000,000.00) of the Gross Settlement Amount will be paid by Callan and/or its insurer and four million and two hundred and fifty thousand dollars ($4,250,000.00) of the Gross Settlement Amount will be paid by the Board Defendants and/or their insurer(s) or Obligee(s). The Gross Settlement Amount shall be the full and sole monetary payment to the Settlement Classes, Plaintiffs, and Class Counsel made by or on behalf of Defendants in connection with the Settlement effectuated through this Settlement Agreement. Neither Defendants nor their insurer(s) or Obligee(s) will make any additional payment in connection with the Settlement of the Class Action.

1.31. “IAP” means the Carpenters Individual Account Pension Plan of Western Washington.

1.32. "IAP Class" means all participants and beneficiaries of the IAP at any time from August 2, 2016 to May 7, 2020, excluding the Defendants.

1.33. "Independent Fiduciary" means an independent fiduciary who will serve as a fiduciary to the Plans to approve and authorize the settlement of Released Claims on behalf of the Plans in accordance with Section 2.1 that has no relationship or interest in any of the Settling Parties. Defendants will select the Independent Fiduciary.

1.34. "Net Settlement Amount" means the Gross Settlement Amount minus (a) all Attorneys' Fees and Costs paid to Class Counsel as authorized by the Court; (b) all Class Representative Service Awards as authorized by the Court; (c) all Administrative Expenses; and (d) a contingency reserve not to exceed an amount to be mutually agreed upon by the Settling Parties that is set aside by the Settlement Administrator for (1) Administrative Expenses incurred before the Settlement Effective Date but not yet paid, (2) Administrative Expenses estimated to be incurred after the Settlement Effective Date, and (3) an amount estimated for adjustments of data or calculation errors.

1.35. "Non-Rollover-Electing IAP Class Member" means an IAP Class Member that is a Former Participant in the IAP who did not submit a Rollover Form or whose Rollover Form is rejected by the Settlement Administrator.

1.36. "Non-Rollover-Electing Retirement Plan Class Member" means a Fully-Distributed Retirement Plan Class Member who did not submit a Rollover Form or whose Rollover Form is rejected by the Settlement Administrator.

1.37. "Obligee" means a Person who makes any portion of the Gross Settlement Amount.

1.38. "Person" means an individual, partnership, corporation, governmental entity or any other form of entity or organization.

1.39. "Post-Effective-Date Distributed Retirement Plan Class Member" means a Retirement Plan Class Member who (i) is not a Fully-Distributed Retirement Plan Class Member and (ii) has had their Retirement Plan benefit fully distributed after the Settlement Effective Date but before the Distribution Commencement Date.

1.40. "Plaintiffs" means the Class Representatives and each member of the Settlement Classes.

1.41. "Plans" means Southwest Carpenters Retirement Savings Plan and Western States Carpenters Pension Plan and each of their predecessor plans that were merged and/or acquired, individually and collectively, and any trust created under each such plan. For the avoidance of doubt, the Southwest Carpenters Retirement Savings Plan is the successor to the Carpenters Individual Account Pension Plan of Western Washington ("IAP") and the Western States Carpenters Pension Plan

is the successor to the Carpenters Retirement Plan of Western Washington ("Retirement Plan"), and references to the IAP and the Retirement Plan throughout this Settlement Agreement shall be construed to include their respective successor plans where the context so requires.

1.42. "Plan of Allocation" means the method of allocating settlement funds to Class Members set forth in Section 5.

1.43. "Preliminary Approval Order" means the order of the Court in substantially the form attached hereto as Exhibit C, whereby the Court preliminarily approves this Settlement.

1.44. "QDRO" means a Qualified Domestic Relations Order within the meaning of 26 U.S.C. § 414(p).

1.45. "Qualified Settlement Fund" means the interest-bearing settlement fund account to be established and maintained by the Escrow Agent in accordance with Article 5 herein and referred to as the Qualified Settlement Fund (within the meaning of Treas. Reg. § 1.468B-1).

1.46. "Recordkeeper" means the entity that maintains electronic records of the Plans' participants and their individual accounts.

1.47. "Released Claims" means any and all actual or potential claims (including claims for any and all losses, damages, unjust enrichment, attorneys' fees, disgorgement, litigation costs, injunction, declaration, contribution, indemnification or any other type or nature of legal or equitable relief), actions, demands, rights, obligations, liabilities, expenses, costs, and causes of action, accrued or not, whether arising under federal, state, or local law, whether by statute, contract, or equity, whether brought in an individual or representative capacity, whether accrued or not, whether known or unknown, suspected or unsuspected, foreseen or unforeseen based in whole or in part on acts or failures to act through the end of the Class Period:

1.47.1. That arise out of or relate to all claims raised in the Complaint or which could have been raised in the Complaint relating to the same subject matter, broadly construed, including any that arise out of, relate to, or are based on any of the allegations, acts, omissions, facts, matters, transactions, or occurrences that were alleged, asserted, or set forth in the Complaint, including any claims related to allocation, recycling, repurchasing, and managing or investing of assets of the Plan; or

1.47.2. That would be barred by *res judicata* based on entry of the Final Order; or

1.47.3. That relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Qualified Settlement Fund to the Plans or any Class Member in accordance with the Plan of Allocation; or

1.47.4. That relate to the approval by the Independent Fiduciary of the Settlement, unless brought against the Independent Fiduciary alone.

1.47.5. "Released Claims" do not include any claims to enforce this Settlement or claims for vested benefits that may be asserted against the Plans that the Class Representatives or the Settlement Classes has or may have arising solely under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to the extent such claims do not relate to the Released Claims in Section 1.47. However, other claims asserted, or which could have been asserted in this action for breaches of fiduciary duties under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) or ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) to address the claims asserted in the First Amended Complaint are included within the definition of "Released Claims."

1.48. "Released Parties" means (a) Defendants, their representatives, attorneys, agents, directors, officers, or employees; (b) Defendants' insurers, co-insurers, excess carriers, reinsurers, and Obligee(s); (c) Defendants' direct and indirect, past, present, and future parents, subsidiaries, affiliates, divisions, joint ventures, predecessors, successors, Successors-In-Interest, assigns, board of trustees, board of directors, officers, trustees, directors, partners, agents, managers, employees or heirs (including any individuals who serve or served in any of the foregoing capacities, such as members of the board of trustees or boards of directors that are associated with any of Defendants' past, present, and future affiliates), and each Person that controls, is controlled by, or is under common control with them, (d) the Plans' current and past fiduciaries, committees, subcommittees, administrators, plan administrators, recordkeepers, service providers, consultants, attorneys, agents, insurers, parties-in-interest, and the Board Defendants' individual current or former employer organizations, and (e) Defendants' independent contractors, representatives, attorneys, administrators, insurers, fiduciaries, accountants, auditors, advisors, consultants, personal representatives, spouses, surviving beneficiaries, heirs, executors, administrators, associates, employee benefit plan fiduciaries (with the exception of the Independent Fiduciary), employee benefit plan administrators, employee benefit plan committees and subcommittees, service providers to the Plans (including their owners and employees), members of their immediate families, consultants, subcontractors, and all persons acting under, by, through, or in concert with any of them.

1.49. "Retirement Plan" means the Carpenters Retirement Plan of Western Washington.

1.50. "Retirement Plan Cash Payment" means the cash distribution calculated and paid to each Non-Rollover-Electing Retirement Plan Class Member pursuant to Section 5.3.5.

1.51. "Retirement Plan Class" means all participants and beneficiaries of the Retirement Plan at any time from August 2, 2016 to May 7, 2020, excluding the Defendants.

1.52. "Review Proceeding" shall have the meaning set forth in Section 1.25.

1.53. "Rollover Form" means the form substantially similar to Exhibit B that the Settlement Administrator will send with the Settlement Notice.

1.54. "Rollover-Electing IAP Class Member" means an IAP Class Member that is a Former Participant in the IAP whose Rollover Form is accepted by the Settlement Administrator.

1.55. "Rollover-Electing Retirement Plan Class Member" means a Fully-Distributed Retirement Plan Class Member whose Rollover Form is accepted by the Settlement Administrator.

1.56. "Settlement" means the settlement to be consummated under this Settlement Agreement and its exhibits, including any modifications or amendments adopted pursuant to Section 14.13.

1.57. "Settlement Administrator" means Atticus Administration, the entity selected and retained by Class Counsel to administer the Settlement and Plan of Allocation.

1.58. "Settlement Agreement" means this agreement embodying the terms of the Settlement, including any modifications or amendments hereto.

1.59. "Settlement Agreement Execution Date" means the date on which the final signature is applied to this Settlement Agreement.

1.60. "Settlement Classes" means all Class Members of the IAP Class and Retirement Plan Class.

1.61. "Settlement Effective Date" means the date on which the Final Order is Final, provided that by such date the Settlement has not been terminated in accordance with Article 12.

1.62. "Settlement Notice" means the Notice of Class Action Settlement and Fairness Hearing to be sent to Class Members identified by the Settlement Administrator following the Court's issuance of the Preliminary Approval Order, in substantially the form attached hereto as Exhibit A. The Settlement Notice shall inform Class Members of a Fairness Hearing to be held with the Court, on a date to be determined by the Court, at which any Class Member satisfying the conditions set forth in the Preliminary Approval Order and the Settlement Notice may be heard regarding (a) the terms of the Settlement Agreement; (b) the petition of Class Counsel for award of Attorneys' Fees and Costs; (c) payment of and reserve for Administrative Expenses; and (d) Class Representative Service Awards.

1.63. "Settling Parties" or "Parties" means the Defendants and the Class Representatives, on behalf of themselves, the Plans, and each of the Class Members.

1.64. "SIB Unit Value" means the dollar value assigned to each Sustainable Income Benefit Unit under the Retirement Plan's actuarial methodology, as determined by the Retirement Plan's actuary as of the applicable valuation date.

1.65. "Successor-In-Interest" shall mean a Person or Party's estate, legal representatives, heirs, successors or assigns, including successors or assigns that result from corporate mergers or other structural changes.

## 2. ARTICLE 2 – REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY, PRELIMINARY SETTLEMENT APPROVAL, AND NOTICE TO THE CLASS

2.1. Independent Fiduciary. The Independent Fiduciary, retained by Defendants on behalf of the Plans, shall have the following responsibilities, including whether to approve and authorize the settlement of Released Claims on behalf of the Plans.

2.1.1. The Independent Fiduciary shall comply with all relevant conditions set forth in Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended ("PTE 2003-39"), in making its determination.

2.1.2. The Independent Fiduciary shall notify Defendants directly of its determination, in writing (with copies to Class Counsel and Defense Counsel), which notification shall be delivered no later than twenty (20) calendar days after Class Counsel provides the Independent Fiduciary either a draft in substantially final form of, or after they file, their application for Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses with the Court. Should the Independent Fiduciary approve the Settlement, it shall execute and deliver a written release in its capacity as a fiduciary of the Plans and for and on behalf of the Plans coextensive with the release from the Plaintiffs and the Settlement Class Members that authorizes the Settlement in accordance with Prohibited Transaction Class Exemption 2003-39.

2.1.3. All reasonable fees and expenses associated with the Independent Fiduciary's determination and performance of its obligations in connection with the Settlement, up to the amount of $25,000 will be paid as an Administrative Expense from the Qualified Settlement Fund, to be deducted from the Gross Settlement Amount.

2.1.4. Defendants, Defense Counsel, and Class Counsel shall respond to reasonable requests by the Independent Fiduciary for information so that

the Independent Fiduciary can review and evaluate the Settlement Agreement.

2.1.5. If Defendants conclude that the Independent Fiduciary's determination does not comply with PTE 2003-39 or is otherwise deficient, Defendants shall so inform the Independent Fiduciary within five (5) calendar days of receipt of the determination**.**

2.1.6. A copy of the Independent Fiduciary determination letter and report shall be provided to Class Counsel who may file it with the Court in support of Final Approval of the Settlement.

2.2. <u>Preliminary Approval</u>. As soon as reasonably possible and subject to any relevant Court Order, the Class Representatives, through Class Counsel, shall file with the Court a motion seeking preliminary approval of this Settlement Agreement and for entry of the Preliminary Approval Order in substantially the form attached hereto as Exhibit C. Defendants will not take a position on these motions, even if they do not agree with all averments of the pleadings filed in support of Plaintiffs' Motion for Preliminary Approval of Settlement, so long as they are consistent with the terms herein. The Preliminary Approval Order to be presented to the Court shall, among other things:

2.2.1. Grant the motion to re-certify the Settlement Classes for settlement purposes only under Fed. R. Civ. P. 23(b)(1);

2.2.2. Approve the text of the Settlement Notice for mailing or sending by electronic means to Class Members;

2.2.3. Determine that under Fed. R. Civ. P. 23(c)(2), the Settlement Notices constitute the best notice practicable under the circumstances, provide due and sufficient notice of the Fairness Hearing and of the rights of all Class Members, and comply fully with the requirements of Fed. R. Civ. P. 23, the Constitution of the United States, and any other applicable law;

2.2.4. Cause the Settlement Administrator to send by first-class mail and/or e-mail the Settlement Notice to each Class Member identified by the Settlement Administrator based upon the data provided by the Plans' Recordkeeper(s);

2.2.5. Provide that, pending final determination of whether the Settlement Agreement should be approved, no Class Member may directly, through Representatives, or in any other capacity, commence any action or proceeding in any court or tribunal asserting any of the Released Claims against Defendants, the Released Parties, and/or the Plans;

2.2.6. Set the Fairness Hearing for no sooner than one hundred and twenty (120) calendar days after the date the motion for entry of the Preliminary

Approval Order is filed, in order to determine whether (a) the Court should approve the Settlement as fair, reasonable, and adequate; (b) the Court should enter the Final Order; and (c) the Court should approve the application for Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses incurred to date, and a reserve for anticipated future Administrative Expenses;

2.2.7. Provide that any objections to any aspect of the Settlement Agreement shall be heard, and any papers submitted in support of said objections shall be considered, by the Court at the Fairness Hearing if they have been filed validly with the Clerk of the Court and copies provided to Class Counsel and Defense Counsel. To be filed validly, the objection and any notice of intent to participate or supporting documents must be filed and postmarked at least twenty-one (21) calendar days prior to the scheduled Fairness Hearing. Any Person wishing to speak at the Fairness Hearing shall file with the Clerk of the Court a notice of intent to participate within the time limitation set forth above;

2.2.8. Provide that any party may file a response to an objection by a Class Member at least seven (7) calendar days before the Fairness Hearing; and

2.2.9. Provide that the Fairness Hearing may, without further direct notice to the Class Members, other than by notice to Class Counsel, be adjourned or continued by order of the Court and/or be heard by Zoom or other United States District Court sanctioned videoconference methodologies.

2.3. <u>Settlement Administrator</u>. Defendants and Defense Counsel shall use reasonable efforts to respond timely to written requests, including by e-mail, from the Settlement Administrator for readily accessible data that is reasonably necessary to determine the feasibility of administering the Plan of Allocation or to implement the Plan of Allocation. The actual and reasonable expenses of any third party, including the Plans' Recordkeeper(s), that are necessary to perform such work shall be Administrative Expenses to be deducted from the Gross Settlement Amount.

2.3.1. The Settlement Administrator must agree to be bound by any confidentiality agreement negotiated by the Settling Parties and any further non-disclosure or security protocol required by the Settling Parties.

2.3.2. The Settlement Administrator shall use the data provided by Defendants and the Plans' Recordkeeper(s) solely for the purpose of meeting its obligations as Settlement Administrator, and for no other purpose.

2.3.3. Defendants shall provide the Settlement Administrator with Class Member data using the last known addresses available to Defendants.

2.3.4. The Settlement Administrator shall provide a written protocol addressing how the Settlement Administrator will maintain and store information provided to it in order to ensure that reasonable and necessary precautions are taken to safeguard the privacy and security of such information.

2.4. Settlement Notice. By the date and in the manner set by the Court in the Preliminary Approval Order, and unless otherwise set forth below, the Settlement Administrator shall cause to be sent to each Class Member identified by the Settlement Administrator a Settlement Notice in the form and manner to be approved by the Court, which shall be in substantially the form attached hereto as Exhibit A or a form subsequently agreed to by the Settling Parties and approved by the Court. The Settlement Administrator shall use commercially reasonable efforts to locate any Class Member whose Settlement Notice is returned and re-send such documents one additional time.

2.5. CAFA Notice. No later than ten (10) calendar days after the filing of the motion for preliminary approval of the Settlement, Board Defendants will send a CAFA Notice, which shall be in substantially the form attached hereto as Exhibit E, to the Attorney General of the United States, the Secretary of the Department of Labor, and the attorneys general of all states in which Class Members reside, as specified by 28 U.S.C. § 1715.

2.6. Settlement Website. The Settlement Administrator shall also establish a Settlement Website and toll-free telephone line where Class Members can obtain additional information regarding the Settlement. The Settlement Website shall include the operative First Amended Complaint; Settlement Agreement; Plaintiffs' Motion for Preliminary Approval of Class Action Settlement; Plaintiffs' Motion for Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses; Plaintiffs' Motion for Final Approval of Class Action Settlement; and any Court orders regarding the Settlement.

## 3. ARTICLE 3 – FINAL SETTLEMENT APPROVAL

3.1. No later than thirty (30) days before the date for filing Objections set in the Preliminary Approval Order, Class Counsel shall submit to the Court a motion for entry of the Final Order (Exhibit D) in the form approved by Class Counsel and Defense Counsel, which shall request approval by the Court of the terms of this Settlement Agreement and entry of the Final Order in accordance with this Settlement Agreement. The Final Order as proposed by the Settling Parties shall provide for the following, among other things, as is necessary to carry out the Settlement consistent with applicable law and governing Plan documents:

3.1.1. Approval of the Settlement of the Released Claims covered by this Settlement Agreement; adjudging the terms of the Settlement Agreement to be fair, reasonable, and adequate to the Plans and the Class Members; and directing the Settling Parties to take the necessary steps to effectuate the terms of the Settlement Agreement

3.1.2. A determination under Fed. R. Civ. P. 23(c)(2) that the Settlement Notice constitutes the best notice practicable under the circumstances and that due and sufficient notice of the Fairness Hearing and the rights of all Class Members has been provided;

3.1.3. Dismissal with prejudice of the Class Action and all Released Claims asserted therein whether asserted by Class Representatives on their own behalf or on behalf of the Class Members, or on behalf of the Plans, without costs to any of the Settling Parties other than as provided for in this Settlement Agreement;

3.1.4. That the Plans and each Class Member (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns) shall be (a) conclusively deemed to have, and by operation of the Final Order shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged the Released Parties from all Released Claims; and (b) barred and enjoined from suing the Released Parties in any action or proceeding alleging any of the Released Claims.

3.1.5. That each Class Member shall release the Released Parties, Defense Counsel, and Class Counsel for any claims, liabilities, and attorneys' fees and expenses arising from the allocation of the Gross Settlement Amount or Net Settlement Amount, any calculations that are part of the allocation and distribution process of the Settlement, and for all tax liability and associated penalties and interest as well as related attorneys' fees and expenses;

3.1.6. That the provisions of Sections 3.1.4 and 3.1.5 shall apply even if any Class Member may thereafter discover facts in addition to or different from those which the Class Members or Class Counsel now know or believe to be true with respect to the Class Action and the Released Claims, whether or not such Class Members receive a monetary benefit from the Settlement, whether or not such Class Members actually received the Settlement Notice, whether or not such Class Members have filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Costs, and whether or not the objections or claims for distribution of such Class Members have been approved or allowed;

3.1.7. That all applicable CAFA requirements have been satisfied;

3.1.8. That the Settlement Administrator shall have final authority to determine the share of the Net Settlement Amount to be allocated to each Class Member in accordance with the Plan of Allocation approved by the Court; and

3.1.9. That, with respect to any matters that arise concerning the implementation of distributions to Class Members who are current participants in the Plans, or the implementation of Supplemental SIB Credits or Retirement Plan Cash Payments to Retirement Plan Class Members (after allocation decisions have been made by the Settlement Administrator in its sole discretion), all questions not resolved by the Settlement Agreement shall be resolved by the Plans' administrator(s) or other fiduciaries of the Plans, in accordance with applicable law and the governing terms of the Plans; and

3.1.10. That within thirty (30) calendar days following the issuance of all settlement payments to Class Members as provided by the Plan of Allocation approved by the Court, the Settlement Administrator shall prepare and provide to Class Counsel and Defense Counsel a list of each Person who received a settlement payment or contribution from the Qualified Settlement Fund and the amount of such payment or contribution.

3.2. The Final Order and judgment entered by the Court approving the Settlement Agreement shall provide that upon its entry, all Settling Parties, the Settlement Classes and the Plans shall be bound by the Settlement Agreement and the Final Order.

## 4. ARTICLE 4 – ESTABLISHMENT OF QUALIFIED SETTLEMENT FUND

4.1. No later than ten (10) calendar days after the Preliminary Approval Order is issued, the Escrow Agent shall establish an escrow account. The Settling Parties agree that the escrow account is intended to be, and will be, an interest-bearing Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 4.1, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to prepare and deliver, in a timely and proper manner, the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

4.2. For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent, or the Settlement Administrator on its behalf, shall timely and properly cause to be filed all informational and other tax returns necessary or advisable with respect to the Gross Settlement Amount (including without limitation applying for a Taxpayer Identification Number for the Fund and filing the returns described in Treas. Reg. § 1.468B-2(k)). Such returns as well as the election described in Paragraph 4.1 shall be consistent with this Article 4 and, in all events, shall reflect that all taxes (as defined in Paragraph 4.4 below)

(including any estimated taxes, interest, or penalties) on the income earned by the Gross Settlement Amount shall be deducted and paid from the Gross Settlement Amount as provided in Paragraph 4.4 hereof.

4.3. Based on information to be supplied by the Settlement Administrator, Class Counsel shall provide to Defendants: (i) written notification of the date of establishment of the Qualified Settlement Fund; (ii) written notification of the following information regarding the Escrow Agent and the Settlement Fund Account: bank name, bank address, ABA number, account number, account name, and IRS Form W-9 and taxpayer identification number; and (iii) any additional information needed for Defendants to deposit the payments set forth below into the Qualified Settlement Fund. The Settlement Administrator shall direct the Escrow Agent to make distributions by wire transfer or check from the Qualified Settlement Fund in strict accordance with the Settlement Agreement and Court Orders. No other disbursements may be authorized.

4.3.1. Within thirty (30) days of the Settlement Effective Date, or fourteen business days from the receipt of the information supplied pursuant to Section 4.3 (whichever is later), Board Defendants and/or their insurer(s) or Obligee(s) shall pay and/or cause to pay $4,250,000.00 into the Qualified Settlement Fund and Callan shall pay and/or cause to be paid $5,000,000.00 into the Qualified Settlement Fund. These deposits may be made by wire or check.

4.4. Taxes and tax expenses are Administrative Expenses to be deducted and paid from the Gross Settlement Amount, including but not limited to: (a) all taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Gross Settlement Amount, including any taxes or tax detriments that may be imposed upon Defendants or Defense Counsel with respect to any income earned by the Gross Settlement Amount for any period during which the Gross Settlement Amount does not qualify as a "qualified settlement fund" for federal or state income tax purposes; and (b) all tax expenses and costs incurred in connection with the operation and implementation of this Article 4 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Article 4). Such taxes and tax expenses shall be Administrative Expenses and shall be paid timely by the Escrow Agent out of the Gross Settlement Amount without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any Class Member any funds necessary to pay such amounts, including the establishment of adequate reserves for any taxes and tax expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)); neither the Released Parties, Defense Counsel, nor Class Counsel are responsible nor shall they have any liability therefor. The Settling Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Article 4.

4.5. The Escrow Agent shall, at the written direction of Class Counsel, invest the Qualified Settlement Fund in short-term United States Agency or Treasury Securities or other instruments backed by the Full Faith and Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof, and shall reinvest the proceeds of these investments as they mature in similar instruments at their then-current market rates or, if prudent, shall hold the proceeds in cash. The payment in Section 4.3.1, together with any interest earned thereon, shall fund the Qualified Settlement Fund.

4.6. The Qualified Settlement Fund will be considered to be in the legal custody of the Court until such time as such funds may be distributed pursuant to the orders of the Court, or the terms of this Settlement Agreement. The Court shall retain continuing jurisdiction over the Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1(c)(1). The Qualified Settlement Fund shall be structured and managed by the Settlement Administrator to qualify as a Qualified Settlement Fund under Section 468B of the Internal Revenue Code, and Treas. Reg. § 1.468B-1 *et seq.*, and the Settlement Administrator shall provide reports to Class Counsel to keep Class Counsel apprised of actions taken by the Settlement Administrator or Escrow Agent for tax compliance purposes. Plaintiffs intend that the Qualified Settlement Fund be structured and administered to preserve, to the maximum degree possible, the tax benefits associated with ERISA-qualified plans. All expenses incurred to maximize the tax benefits, if any, for the Settlement Classes, and taxes on the income of the Qualified Settlement Fund and tax-related expenses incurred in connection with the taxation of the Qualified Settlement Fund shall be the responsibility of Plaintiffs and shall be paid out of the Qualified Settlement Fund.

4.7. The Escrow Agent shall not disburse the Qualified Settlement Fund or any portion except as provided in this Settlement Agreement, in an order of the Court, or in a subsequent written stipulation between Class Counsel and Defense Counsel. Subject to the orders of the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Settlement Agreement.

4.8. The Escrow Agent, or the Settlement Administrator on its behalf, shall be responsible for making provision for the payment from the Qualified Settlement Fund of all taxes and tax expenses, if any, owed with respect to the Qualified Settlement Fund, and for all tax reporting, remittance, and/or withholding obligations, if any, for amounts distributed from it. The Released Parties, Defense Counsel, and/or Class Counsel have no responsibility or any liability for any taxes or tax expenses owed by, or any tax reporting or withholding obligations, if any, of the Qualified Settlement Fund.

## 5. PAYMENTS FROM THE QUALIFIED SETTLEMENT FUND

5.1. Plan of Allocation. The Net Settlement Amount shall be allocated between the IAP Class and Retirement Plan Class such that each Class receives a share of the Net

Settlement Amount equal to that Plan's aggregate account balance in AllianzGI Structured Alpha U.S. Equity 250 LLC and AllianzGI Structured Alpha 1000 Plus LLC as of December 31, 2019, divided by the combined aggregate account balances of both Plans in those two funds as of that date, as determined by the Settlement Administrator based on records provided by the Recordkeeper(s). The portion so allocated to the IAP Class is the "IAP Class Allocation," to be distributed in accordance with Section 5.2. The portion so allocated to the Retirement Plan Class is the "Retirement Plan Class Allocation," to be allocated and distributed in accordance with Section 5.3.

5.2. IAP Class Allocation. For each IAP Class Member identified by the Settlement Administrator, the Settlement Administrator shall calculate their allocable portion of the IAP Class Allocation as follows

5.2.1. Board Defendants shall direct the current Recordkeeper for the IAP to provide the Settlement Administrator with the IAP account balance of each IAP Class Member as of December 31, 2019.

5.2.2. Based on the data obtained pursuant to Section 5.2.1, the Settlement Administrator shall use each IAP Class Member's IAP account balance as of December 31, 2019 as their "IAP Class Allocation Balance." Any IAP Class Members with an IAP account balance of $0.00 as of December 31, 2019 shall have an IAP Class Allocation Balance of $0.00 and shall not be eligible to receive a distribution under this IAP Class Allocation.

5.2.3. The Settlement Administrator shall divide each IAP Class Member's IAP Class Allocation Balance by the sum of all IAP Class Allocation Balances. The result for each IAP Class Member shall be their IAP Preliminary Settlement Share.

5.2.4. The Settlement Administrator shall multiply each IAP Class Member's IAP Preliminary Settlement Share by the IAP Class Allocation. The result for each IAP Class Member shall be their IAP Preliminary Entitlement Amount.

5.2.5. The Settlement Administrator shall calculate the sum of any Preliminary Entitlement Amounts under $5.00 that were calculated for IAP Class Members who are Former Participants of the IAP. The result is the "IAP De Minimis Reallocation Amount."

5.2.6. For each IAP Class Member who is (1) a Current Participant of the IAP or (2) a Former Participant whose IAP Preliminary Entitlement Amount is $5.00 or more, the Settlement Administrator shall divide their IAP Class Allocation Balance by

the sum of all such IAP Class Members' IAP Class Allocation Balances. The result for each such IAP Class Member shall be their IAP De Minimis Reallocation Share.

5.2.7. For each IAP Class Member for whom a IAP De Minimis Reallocation Share was calculated pursuant to Section 5.2.6, the Settlement Administrator shall add to their IAP Preliminary Entitlement Amount the amount that is equal to their IAP De Minimis Reallocation Share multiplied by the IAP De Minimis Reallocation Amount. The sum for each such IAP Class Member is their IAP Final Entitlement Amount.

5.2.8. For any Former Participant of the IAP whose IAP Preliminary Entitlement Amount was less than $5.00, their IAP Final Entitlement Amount shall be $0.00.

5.3. Retirement Plan Class Allocation. The Retirement Plan Class Allocation shall be distributed to the Retirement Plan Class through a supplemental credit to each Retirement Plan Class Member's Sustainable Income Benefit ("SIB") Units, calculated and applied as follows:

5.3.1. The Settlement Administrator shall determine the SIB Unit Value as of December 31, 2019 (the "SIB Valuation Date"), as reported by the Retirement Plan's actuary or Recordkeeper. Board Defendants shall also direct the Recordkeeper for the Retirement Plan to provide the Settlement Administrator with the SIB Unit accrual as of the SIB Valuation Date for each Retirement Plan Class Member, including Fully-Distributed Retirement Plan Class Members.

5.3.2. The Settlement Administrator shall calculate the aggregate dollar value of all SIB Units held by all Retirement Plan Class Members with a SIB Unit accrual greater than zero as of the SIB Valuation Date (the "Total SIB Value"). The Settlement Administrator shall then divide the Retirement Plan Class Allocation by the Total SIB Value to determine the "SIB Credit Percentage."

5.3.3. Each Retirement Plan Class Member who (i) had a SIB Unit accrual greater than zero as of the SIB Valuation Date, (ii) has not had their Retirement Plan benefit fully distributed as of the Settlement Effective Date, and (iii) has not had their Retirement Plan benefit fully distributed before the Distribution Commencement Date, shall be credited with additional SIB Units (or fractions thereof) equal to the number of their SIB Units as of the SIB Valuation Date multiplied by the SIB Credit Percentage (each such credit is a "Supplemental SIB Credit"). For the avoidance of doubt, the Supplemental SIB Credit for each eligible

member shall be calculated based on such member's SIB Unit accrual as of the SIB Valuation Date, irrespective of any changes to such member's SIB Unit accrual after the SIB Valuation Date. The Supplemental SIB Credit shall be applied to each eligible member's account as of the Settlement Effective Date. The annual SIB unit value adjustment applicable to such Supplemental SIB Credits shall be uncapped, consistent with the absence of adjustment caps for participants in the Southwest Carpenters Pension Plan effective January 1, 2025. The annual SIB unit value adjustment applicable to Supplemental SIB Credits shall occur with the 2026 plan year adjustment. Retirement Plan Class Members with a SIB Unit accrual of zero as of the SIB Valuation Date, or whose Retirement Plan benefit has been fully distributed as of the Settlement Effective Date, or who are Post-Effective-Date Distributed Retirement Plan Class Members, shall not be eligible to receive a Supplemental SIB Credit.

5.3.4. The Retirement Plan Class Allocation, less the aggregate Retirement Plan Cash Payments and Post-Effective-Date Distributed Cash Payments, shall be wired from the Qualified Settlement Fund to the Retirement Plan no later than twenty (20) Business Days following the Distribution Commencement Date. Following receipt of such wire transfer, the Retirement Plan's Recordkeeper, actuary, or administrator shall implement the Supplemental SIB Credits calculated pursuant to Section 5.3.3 in accordance with this Section 5.3 and any required amendment to the Retirement Plan. An actuary or recordkeeper of the Retirement Plan shall determine any adjustment to the SIB Unit Value necessary for the transferred amount to fund the Supplemental SIB Credits.

5.3.5. Retirement Plan Cash Payments. Each Fully-Distributed Retirement Plan Class Member shall receive a distribution (a "Retirement Plan Cash Payment") in lieu of a Supplemental SIB Credit, calculated and distributed as follows: the Settlement Administrator shall multiply each Fully-Distributed Retirement Plan Class Member's SIB Unit accrual as of the SIB Valuation Date by the SIB Credit Percentage, and then multiply the resulting number of additional SIB Units by the SIB Unit Value as of the SIB Valuation Date, to determine the dollar value of the Retirement Plan Cash Payment for such member. If the Retirement Plan Cash Payment calculated for a Fully-Distributed Retirement Plan Class Member is less than $5.00, no Retirement Plan Cash Payment shall be distributed to that member, and the amount shall be treated as $0.00 for purposes of Section 5.3.4. Each Fully-Distributed Retirement Plan Class Member shall be

offered the option to elect a rollover of their Retirement Plan Cash Payment by submitting a Rollover Form to the Settlement Administrator in accordance with Section 5.6.7. Retirement Plan Cash Payments to Non-Rollover-Electing Retirement Plan Class Members shall be distributed from the Qualified Settlement Fund by the Settlement Administrator no later than twenty (20) Business Days following the Distribution Commencement Date, by calculating and withholding any taxes required to be withheld pursuant to Section 5.8 and mailing a check to the Fully-Distributed Retirement Plan Class Member at the mailing address determined, in the judgment of the Settlement Administrator, most likely to reach such member, after using commercially reasonable efforts to verify such address.

5.3.6. Post-Effective-Date Distributed Cash Payments. Each Post-Effective-Date Distributed Retirement Plan Class Member shall receive a cash payment (a "Post-Effective-Date Distributed Cash Payment") in lieu of a Supplemental SIB Credit. The Post-Effective-Date Distributed Cash Payment for each such Member shall be calculated in the same manner as a Retirement Plan Cash Payment under Section 5.3.5, using such member's SIB Unit accrual as of the SIB Valuation Date and the SIB Credit Percentage. Post-Effective-Date Distributed Cash Payments are not eligible rollover distributions within the meaning of Code Section 402 and shall be distributed solely as taxable cash payments; no rollover option shall be offered to Post-Effective-Date Distributed Retirement Plan Class Members. Post-Effective-Date Distributed Cash Payments shall be distributed from the Qualified Settlement Fund by the Settlement Administrator no later than twenty (20) Business Days following the Distribution Commencement Date, by calculating and withholding any taxes required to be withheld pursuant to Section 5.8 and mailing a check to the Post-Effective-Date Distributed Retirement Plan Class Member at the mailing address determined, in the judgment of the Settlement Administrator, most likely to reach such member, after using commercially reasonable efforts to verify such address. If the Post-Effective-Date Distributed Cash Payment calculated for a Post-Effective-Date Distributed Retirement Plan Class Member is less than $5.00, no such payment shall be distributed to that member, and the amount shall be treated as $0.00 for purposes of Section 5.3.4.

5.4. In accordance with the procedures set forth in this Article, as approved or modified by the Court, the Settlement Administrator will distribute to each IAP Class Member their IAP Final Entitlement Amount from the IAP Class Allocation, and shall cause the amount described in Section 5.3.4 to be transferred to the Retirement Plan for application of Supplemental SIB Credits in accordance with

Section 5.3.3, and shall distribute Retirement Plan Cash Payments to Fully-Distributed Retirement Plan Class Members in accordance with Section 5.3.5, and Post-Effective-Date Distributed Cash Payments to Post-Effective-Date Distributed Retirement Plan Class Members in accordance with Section 5.3.6. Any IAP Final Entitlement Amounts, Retirement Plan Cash Payments, or Post-Effective-Date Distributed Cash Payments distributed but not cashed (as contemplated by Section 5.7) shall revert to the Qualified Settlement Fund and be disbursed according to the procedure set forth in Section 5.7.

5.4.1. The Plan of Allocation shall be submitted to the Court for preliminary and final approval in connection with the preliminary and final approval motions contemplated by the Settlement Agreement. If the Court rejects this Plan of Allocation, Plaintiffs shall provide their revised plan of allocation for review and comment by Defendants before submission to the Court.

5.4.2. The Class Representatives, Class Counsel, Defendants, and Defense Counsel shall have no responsibility or liability for the calculations and distributions of the Net Settlement Amount to Settlement Class Members. In the event of an error by the Settlement Administrator in the calculations or distributions of the Net Settlement Amount to Settlement Class Members, the Settlement Administrator shall correct the error within a reasonable amount of time.

5.4.3. The aggregate of all IAP Final Entitlement Amounts, Supplemental SIB Credits, and Retirement Plan Cash Payments may not exceed the Net Settlement Amount. In the event that the Settlement Administrator determines that such aggregate would exceed the Net Settlement Amount, the Settlement Administrator is authorized to make such *pro rata* changes as are necessary to ensure that the aggregate payment to Settlement Class Members pursuant to the Plan of Allocation does not exceed the Net Settlement Amount.

5.5. Following the Settlement Effective Date and completion of all payments to the Qualified Settlement Fund required by Sections 4.3.1, the Qualified Settlement Fund shall be distributed in the following manner, as approved or modified by the Court: First, within ten (10) Business Days, all Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses approved by the Court shall be paid or reimbursed. The date on which such fees, awards, and expenses are paid or reimbursed is the "Distribution Commencement Date." Second, within twenty (20) Business Days of the Distribution Commencement Date, (a) the Settlement Administrator shall begin distributing the Net Settlement Amount to Class Members in accordance with the Plan of Allocation and this Section 5.5. For the avoidance of doubt, the twenty (20) Business Day distribution deadlines set forth in Sections 5.3.4, 5.3.5, 5.3.6, 5.6.2, 5.6.4, and 5.6.7 shall run

from the Distribution Commencement Date. Pending final distribution of the Net Settlement Amount to Class Members, the Escrow Agent will maintain the Qualified Settlement Fund. If Class Counsel's motion for Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses remains pending as of the Settlement Effective Date, calculation and distribution of the Net Settlement Amount shall proceed subject to a reserve maintained in the Qualified Settlement Fund in an amount equal to the sum of Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses requested in Class Counsel's motion. Any difference between the amount of such reserve and a subsequent award of Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses shall be distributed per Section 5.7.1.

5.6. Initial Distribution of IAP Final Entitlement Amounts to IAP Class Members.

5.6.1. For Current Participants of the IAP, their IAP Final Entitlement Amount shall be credited to their IAP account;

5.6.2. For each Rollover-Electing IAP Class Member, no later than twenty (20) Business Days following the Distribution Commencement Date, the Settlement Administrator shall attempt to effect a rollover of their IAP Final Entitlement Amount from the Qualified Settlement Fund to the individual retirement account or other eligible employer plan elected by each Rollover-Electing IAP Class Member in their Rollover Form, if the conditions for such rollover are satisfied and adequate paperwork necessary to transfer such IAP Final Entitlement Amount by rollover has been provided.

5.6.3. If the Settlement Administrator is unable to effectuate the rollover instructions of any Rollover-Electing IAP Class Member as provided in their Rollover Form due to inadequate information supplied by the IAP Class Member or failure by the custodian of the individual retirement account or other eligible employer plan designated by the IAP Class Member to claim the IAP Class Member's IAP Final Entitlement Amount within thirty (30) days of its issuance from the Qualified Settlement Fund, the IAP Class Member will be treated as a Non-Rollover-Electing IAP Class Member.

5.6.4. For each Non-Rollover-Electing IAP Class Member, no later than twenty (20) Business Days following the Distribution Commencement Date, or as soon as practicable if the Settlement Class Member becomes a Non-Rollover-Electing IAP Class Member pursuant to Section 5.6.3, the Settlement Administrator shall distribute their IAP Final Entitlement Amount from the Qualified Settlement Fund by calculating and withholding any

taxes required to be withheld per Section 5.8 and mailing a check for the remainder of the IAP Final Entitlement Amount to the IAP Class Member.

5.6.5. Before mailing any check to a Former Participant IAP Class Member, the Settlement Administrator shall (a) determine whether the IAP Class Member has provided an updated mailing address to Class Counsel or the Settlement Administrator and (b) use commercially reasonable efforts to attempt to verify the IAP Class Member's mailing address and search for any new address information. Each check shall be sent to the mailing address determined, in the judgment of the Settlement Administrator, most likely to reach the IAP Class Member.

5.6.6. For each check issued to a Former Participant IAP Class Member, the Settlement Administrator shall (1) calculate and withhold any applicable taxes required to be withheld associated with the payments allocable to the IAP Class Member; (2) report such payments and remit such tax withholdings to the Internal Revenue Service and applicable state and local revenue agents; and (3) issue appropriate tax forms to the IAP Class Member.

5.6.7. For each Rollover-Electing Retirement Plan Class Member, no later than twenty (20) Business Days following the Distribution Commencement Date, the Settlement Administrator shall attempt to effect a rollover of their Retirement Plan Cash Payment from the Qualified Settlement Fund to the individual retirement account or other eligible employer plan elected by each Rollover-Electing Retirement Plan Class Member in their Rollover Form, if the conditions for such rollover are satisfied and adequate paperwork necessary to transfer such Retirement Plan Cash Payment by rollover has been provided. If the Settlement Administrator is unable to effectuate the rollover instructions of any Rollover-Electing Retirement Plan Class Member as provided in their Rollover Form due to inadequate information supplied by the Fully-Distributed Retirement Plan Class Member or failure by the custodian of the individual retirement account or other eligible employer plan designated by such member to claim the Retirement Plan Cash Payment within thirty (30) days of its issuance from the Qualified Settlement Fund, the Fully-Distributed Retirement Plan Class Member will be treated as a Non-Rollover-Electing Retirement Plan Class Member and their Retirement Plan Cash Payment shall be distributed as set forth in Section 5.3.5.

5.7. Expiration of Checks and Disbursement of Unclaimed IAP Final Entitlement Amounts, Unclaimed Retirement Plan Cash Payments, and Unclaimed Post-Effective-Date Distributed Cash Payments.

5.7.1. For Former Participant IAP Class Members, Fully-Distributed Retirement Plan Class Members, and Post-Effective-Date Distributed Retirement Plan Class Members, checks issued pursuant to this Plan of Allocation shall expire sixty (60) calendar days after their issue date. After the expiration of uncashed checks, all IAP Final Entitlement Amounts, Retirement Plan Cash Payments, and Post-Effective-Date Distributed Cash Payments shall revert to the Qualified Settlement Fund and thereafter be transferred to the IAP and Retirement Plan, respectively, and used to defray expenses that would otherwise be charged to those Plans' participants or otherwise used or allocated for the benefit of the participants of those Plans.

5.8. Responsibility for taxes.

5.8.1. The Settling Parties acknowledge that any payments to IAP Class Members, Fully-Distributed Retirement Plan Class Members, and Post-Effective-Date Distributed Retirement Plan Class Members are subject to applicable tax laws. Defense Counsel, Defendants, Class Counsel, and the Class Representatives will provide no tax advice to the Class Members and make no representations regarding the tax consequences of any of the Settlement payments described in this Settlement Agreement. Deductions will be made, and reporting will be performed by the Settlement Administrator, as required by law and the terms of this Settlement Agreement in respect of all payments or distributions made to IAP Class Members, Retirement Plan Cash Payments made to Fully-Distributed Retirement Plan Class Members, and Post-Effective-Date Distributed Cash Payments made to Post-Effective-Date Distributed Retirement Plan Class Members, under the Settlement Agreement. For the avoidance of doubt, the Supplemental SIB Credits applied pursuant to Section 5.3.3 to Retirement Plan Class Members who are not Fully-Distributed Retirement Plan Class Members constitute plan-level benefit adjustments and do not give rise to any withholding or reporting obligation at the time of such credit; any tax obligations of Retirement Plan Class Members with respect to the Supplemental SIB Credits shall arise in the ordinary course upon payment of their pension benefits under the Retirement Plan.

5.8.2. The Settlement Administrator is the "administrator" of the Qualified Settlement Fund under Treas. Reg. § 1.468B-2(k)(3)(ii) and the terms of this Settlement Agreement. Consistent with

Treas. Reg. § 1.468B-2(l)(2), and under the terms of this Settlement Agreement, the Settlement Administrator shall have sole responsibility for tax withholding and reporting for the Qualified Settlement Fund and its distributions, and the fulfillment of plan administrative functions related to any rollover distributions to IAP Class Members who are Former Participants and to Rollover-Electing Retirement Plan Class Members, including determining whether the distributions to such Class Members qualify as eligible rollover distributions within the meaning of Code Section 402 and implementing regulations and, if so, for compliance with same, including responsibility for any notices that may be required for such distributions. For the avoidance of doubt, the foregoing rollover and Code Section 402 obligations apply to IAP Class Members who are Former Participants and to Rollover-Electing Retirement Plan Class Members, and do not apply to Non-Rollover-Electing Retirement Plan Class Members or to Retirement Plan Class Members who are not Fully-Distributed Retirement Plan Class Members. Retirement Plan Cash Payments to Non-Rollover-Electing Retirement Plan Class Members are not eligible for rollover distributions within the meaning of Code Section 402 and shall be distributed solely as taxable cash payments subject to applicable withholding and reporting requirements.

5.8.3. Each IAP Class Member who receives a payment pursuant to the Settlement Agreement shall be fully and ultimately responsible for payment of any and all federal, state and local taxes resulting from or attributable to the payment received by such person. Each IAP Class Member shall hold Defendants, Defense Counsel, Released Parties, Class Counsel, and the Settlement Administrator harmless from (a) any tax liability, including without limitation penalties and interest, related in any way to payments or credits under the Settlement Agreement, and (b) the costs (including, without limitation, fees, costs and expenses of attorneys, tax advisors, and experts) of any proceedings (including, without limitation, any investigation, response, and/or suit) related to such tax liability. Each Retirement Plan Class Member who receives a Supplemental SIB Credit pursuant to Section 5.3.3 shall be fully and ultimately responsible for any federal, state, and local taxes arising from or attributable to their Supplemental SIB Credit upon payment of their pension benefits under the Retirement Plan in the ordinary course, and shall hold Defendants, Defense Counsel, Released Parties, Class Counsel, and the Settlement Administrator harmless from (a) any tax liability, including without limitation penalties and interest, related in any way to payments or credits under the Settlement Agreement, and (b) the costs (including, without limitation, fees,

costs and expenses of attorneys, tax advisors, and experts) of any proceedings (including, without limitation, any investigation, response, and/or suit) related to such tax liability. Each Fully-Distributed Retirement Plan Class Member who receives a Retirement Plan Cash Payment pursuant to Section 5.3.5 shall be fully and ultimately responsible for payment of any and all federal, state and local taxes resulting from or attributable to the Retirement Plan Cash Payment received by such person, and shall hold Defendants, Defense Counsel, Released Parties, Class Counsel, and the Settlement Administrator harmless from (a) any tax liability, including without limitation penalties and interest, related in any way to payments or credits under the Settlement Agreement, and (b) the costs (including, without limitation, fees, costs and expenses of attorneys, tax advisors, and experts) of any proceedings (including, without limitation, any investigation, response, and/or suit) related to such tax liability. Each Post-Effective-Date Distributed Retirement Plan Class Member who receives a Post-Effective-Date Distributed Cash Payment pursuant to Section 5.3.6 shall be fully and ultimately responsible for payment of any and all federal, state and local taxes resulting from or attributable to the Post-Effective-Date Distributed Cash Payment received by such person, and shall hold Defendants, Defense Counsel, Released Parties, Class Counsel, and the Settlement Administrator harmless from (a) any tax liability, including without limitation penalties and interest, related in any way to payments or credits under the Settlement Agreement, and (b) the costs (including, without limitation, fees, costs and expenses of attorneys, tax advisors, and experts) of any proceedings (including, without limitation, any investigation, response, and/or suit) related to such tax liability.

5.8.4. The Net Settlement Amount, to the extent (a) credited to the IAP accounts of, or distributed as rollover distributions to, IAP Class Members and (b) transferred to the Retirement Plan and applied as Supplemental SIB Credits to Retirement Plan Class Members who are not Fully-Distributed Retirement Plan Class Members, (c) distributed as rollover distributions or taxable cash payments to Fully-Distributed Retirement Plan Class Members, and (d) distributed as taxable cash payments to Post-Effective-Date Distributed Retirement Plan Class Members, in each case in accordance with the Plan of Allocation, is intended to constitute "restorative payments" within the meaning of Revenue Ruling 2002-45 for all purposes.

5.9. The Released Parties shall have no responsibility for or liability whatsoever with respect to (a) any act, omission, or determination of the Settlement Administrator, or any of their respective designees or agents, in connection with the

administration of the Qualified Settlement Fund or otherwise; (b) the management, investment, or distribution of the Qualified Settlement Fund; (c) the Plan of Allocation as approved by the Court; (d) the determination, administration, calculation, or payment of any claims asserted against the Qualified Settlement Fund; (e) any losses suffered by, or fluctuations in the value of, the Qualified Settlement Fund; or (f) the payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Qualified Settlement Fund or tax reporting or payments to or tax withholding from payments made to Class Members from the Qualified Settlement Fund, or the filing of any returns. Further, the Released Parties shall have no responsibility for or liability whatsoever with respect to any act, omission, or determination of the Settlement Administrator in connection with the administration of the Qualified Settlement Fund, including the offering of a tax-qualified rollover to Class Members, or otherwise.

5.10. Final List of Class Members. Prior to the disbursement of the Net Settlement Amount to the Plans, the Settlement Administrator shall provide to Defense Counsel and Class Counsel a final list of Class Members, in electronic format, to whom the Net Settlement Amount will be distributed in accordance with the Plan of Allocation. Such list shall be final, and only persons on the list or their Beneficiaries or Alternate Payees shall be eligible to receive any recovery from this Settlement.

5.11. Beneficiaries and Alternate Payees. Where a Class Member is deceased or subject to a QDRO, any IAP Final Entitlement Amount, Supplemental SIB Credit, or Retirement Plan Cash Payment to which such Class Member would otherwise be entitled shall be distributed to, or applied for the benefit of, such Class Member's Beneficiary or Alternate Payee, as applicable, in accordance with the following: (a) for IAP Class Members, distributions to Beneficiaries and Alternate Payees shall be made in the same manner as distributions to Former Participants under Sections 5.6.2 through 5.6.6, subject to applicable withholding and reporting requirements; (b) for Retirement Plan Class Members receiving Supplemental SIB Credits, credits shall be applied to the account of the Beneficiary or Alternate Payee as recognized under the Retirement Plan; (c) for Fully-Distributed Retirement Plan Class Members, Retirement Plan Cash Payments to Beneficiaries and Alternate Payees shall be made in the same manner as payments to Fully-Distributed Retirement Plan Class Members under Section 5.3.5 and, for Rollover-Electing Retirement Plan Class Members, Section 5.6.7; and (d) for Post-Effective-Date Distributed Retirement Plan Class Members, Post-Effective-Date Distributed Cash Payments to Beneficiaries and Alternate Payees shall be made in the same manner as payments to Post-Effective-Date Distributed Retirement Plan Class Members under Section 5.3.6. In each case, the Settlement Administrator shall rely on Beneficiary and Alternate Payee designations as reflected in the applicable Plan's records as of the Settlement Effective Date.

5.12. Under no circumstances will the Qualified Settlement Fund revert to Defendants, except if the Settlement Agreement is terminated as provided by Section 12.2.

## 6. ARTICLE 6 – ATTORNEYS' FEES AND COSTS

6.1. Application for Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses. Class Counsel intends to seek to recover their attorneys' fees not to exceed $3,083,333.33, and litigation costs and expenses advanced and carried by Class Counsel for the duration of the Class Action, which shall be recovered from the Gross Settlement Amount. Class Counsel also intends to seek Class Representative Service Awards, in an amount not to exceed $10,000 each for Terrance Johnson, Brent Yahraus, and Jacy Purkiss which shall be recovered from the Gross Settlement Amount.

6.2. Class Counsel will file a motion for an award of Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses at least thirty (30) calendar days before the deadline set in the Preliminary Approval Order for objections to the proposed Settlement, which may be supplemented thereafter.

## 7. ARTICLE 7 – RELEASE AND COVENANT NOT TO SUE

7.1. As of the Settlement Effective Date, the Plans (subject to Independent Fiduciary approval as required by Section 2.1) and the Class Members (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns), on their own behalf and on behalf of the Plans, shall fully, finally, and forever settle, release, relinquish, waive, and discharge all Released Parties from the Released Claims, whether or not such Class Members may discover facts in addition to or different from those which the Class Members or Class Counsel now know or believe to be true with respect to the Action and the Released Claims; whether or not any Class Member receives a monetary benefit from the Settlement, whether or not such Class Members have actually received the Settlement Notice, whether or not such Class Members have filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses, and whether or not the objections or claims for distribution of such Class Members have been approved or allowed.

7.2. As of the Settlement Effective Date, the Class Representatives, the Class Members and the Plans (subject to Independent Fiduciary approval as required by Section 2.1), expressly agree that they, acting individually or together, or in combination with others, shall not sue or seek to institute, maintain, prosecute, argue, or assert in any action or proceeding (including but not limited to an IRS determination letter proceeding, a Department of Labor proceeding, an arbitration or a proceeding before any state insurance or other department or commission), any cause of action, demand, or claim on the basis of, connected with, or arising out of any of the Released Claims. Nothing herein shall preclude any action to enforce the terms of this Settlement Agreement in accordance with the procedures set forth in this Settlement Agreement.

7.3. Class Counsel, the Class Representatives, Class Members, or the Plans may hereafter discover facts in addition to or different from those that they know or believe to be true with respect to the Released Claims. Such facts, if known by them, might have affected the decision to settle with the Released Parties, or the decision to release, relinquish, waive, and discharge the Released Claims, or the decision of a Class Member not to object to the Settlement. Notwithstanding the foregoing, each Class Member and the Plans shall expressly, upon the entry of the Final Order, be deemed to have, and, by operation of the Final Order, shall have fully, finally, and forever settled, released, relinquished, waived, and discharged any and all Released Claims. The Class Representatives, Class Members and the Plans acknowledge and shall be deemed by operation of the Final Order to have acknowledged that the foregoing waiver was bargained for separately and is a key element of the Settlement embodied in this Settlement Agreement of which this release is a part.

7.4. Each Class Representative, each Class Member, and the Plans hereby stipulate and agree with respect to any and all Released Claims that, upon entry of the Final Order, the Class Members shall be conclusively deemed to, and by operation of the Final Order shall, settle, release, relinquish, waive, and discharge any and all rights or benefits they may now have, or in the future may have, under any law relating to the releases of unknown claims pertaining specifically to Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Also, the Class Representatives, Class Members and the Plans shall, upon entry of the Final Order with respect to the Released Claims, waive any and all provisions, rights and benefits conferred by any law or of any State or territory within the United States or any foreign country, or any principle of common law, which is similar, comparable or equivalent in substance to Section 1542 of the California Civil Code.

7.5. Dismissal With Prejudice. The Class Action and all Released Claims shall be dismissed with prejudice.

7.6. No Impact on Prior Releases. The Released Claims in the Class Action shall not invalidate or impair any prior release of claims by any Class Members against any of the Released Parties.

7.7. Mutual Release Among Defendants**.** As of the Settlement Effective Date, Callan and the Board Defendants, each on behalf of itself and its respective predecessors, Successors-In-Interest, assigns, insurers, and present and former officers, directors, trustees, employees, agents, and representatives, fully and finally release and

discharge one another, and each other's foregoing related persons and Obligee(s), from any and all claims, whether known or unknown, including any claim for contribution or indemnification, arising out of or relating to the Action, the Released Claims, or the matters alleged in the First Amended Complaint. This release does not extend to any claim to enforce this Settlement Agreement or to assert any right arising under it.

## 8. ARTICLE 8 – COVENANTS

8.1. The Settling Parties covenant and agree as follows:

8.2. Taxation. Plaintiffs acknowledge that the Released Parties have no responsibility for any taxes due on funds deposited in or distributed from the Qualified Settlement Fund or that the Plaintiffs or Class Counsel receive from the Gross Settlement Amount. Plaintiffs further acknowledge that any such tax payments, and any professional, administrative, or other expenses associated with such tax payments, shall be paid out of the Qualified Settlement Fund. Nothing herein shall constitute an admission or representation that any such taxes will or will not be due.

8.3. Cooperation. Board Defendants shall cooperate with Class Counsel by using reasonable efforts to provide, to the extent reasonably accessible, information to identify Class Members and to implement the Plan of Allocation.

8.3.1. Board Defendants or Board Defense Counsel shall work with the Recordkeeper(s) to provide to the Settlement Administrator and/or Class Counsel, as soon as practicable, (1) the names, last known addresses, and email addresses to the extent available, of members of the Settlement Classes, as compiled from reasonably accessible electronic records maintained by the Recordkeeper(s); (2) the social security numbers of Settlement Class Members in order for the Settlement Administrator to perform a National Change of Address search to update out-of-date addresses; and (3) the Plans' participant data necessary to perform calculations pursuant to the Plan of Allocation. With respect to the Plan of Allocation data, the Plans' Recordkeeper(s) shall take commercially reasonable steps to ensure the data provided is complete as it exists in the Recordkeepers' systems. Neither Plaintiffs, Class Counsel, Defendants, or Defense Counsel will be responsible or liable in any way for ensuring the completeness or accuracy of the information provided by the Recordkeeper(s) pursuant to this section.

8.3.2. The Settlement Administrator shall use the information provided by Board Defendants, Board Defense Counsel, and/or the Recordkeeper(s) pursuant to Section 8.3.1 to compile a preliminary list of Class Members for purposes of sending the Class Notice and calculating payments pursuant to the Plan of Allocation.

8.3.3. Class Counsel and their agents will use any information provided by Board Defendants, Board Defense Counsel, and/or the Recordkeeper(s) pursuant to Section 8.3.1 solely for the purpose of providing notice and administering this Settlement and for no other purpose and will take all reasonable and necessary steps as required by law to maintain the security and confidentiality of this information.

8.4. The Settling Parties shall reasonably cooperate with each other to effectuate this Settlement, including with respect to the Plan of Allocation, and shall not do anything or take any position inconsistent with obtaining a prompt Final Order approving the Settlement unless expressly permitted by this Settlement Agreement. The Settling Parties shall suspend any and all efforts to prosecute and to defend the Class Action pending entry of the Final Order or, if earlier, termination of the Settlement Agreement.

## 9. ARTICLE 9 – REPRESENTATION AND WARRANTIES

9.1. Settling Parties' Representations and Warranties. The Settling Parties, and each of them, represent and warrant as follows, and each Settling Party acknowledges that each other Settling Party is relying on these representations and warranties in entering into this Settlement Agreement:

9.1.1. That they have diligently prepared the case pursuant to the Court's orders; that they are voluntarily entering into this Settlement Agreement as a result of arm's length negotiations; that in executing this Settlement Agreement they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; and that, except as provided herein, they have not been influenced to any extent whatsoever in executing this Settlement Agreement by any representations, statements, or omissions pertaining to any of the foregoing matters by any Settling Party or by any Person representing any Settling Party to this Settlement Agreement. Each Settling Party assumes the risk of mistake as to facts or law. Each Settling Party further recognizes that additional evidence may have come to light, but that they nevertheless desire to avoid the expense and uncertainty of litigation by entering into the Settlement.

9.1.2. That they have carefully read the contents of this Settlement Agreement, and this Settlement Agreement is signed freely by each Person executing this Settlement Agreement on behalf of each of the Settling Parties. The Settling Parties, and each of them, further represent and warrant to each other that he, she, or it has made such investigation of the facts pertaining to the Settlement, this Settlement Agreement, and all of the matters pertaining thereto, as he, she, or it deems necessary.

9.2. Signatories' Representations and Warranties. Each Person executing this Settlement Agreement on behalf of any other Person does hereby personally represent and warrant to the other Settling Parties that he or she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal whom such individual represents or purports to represent.

## 10. ARTICLE 10 – NO ADMISSION OF LIABILITY

10.1. The Settling Parties and Obligee(s) understand and agree that this Settlement Agreement embodies a compromise settlement of disputed claims, and that nothing in this Settlement Agreement, including the furnishing of consideration for this Settlement Agreement, shall be deemed to constitute any finding, admission or suggestion of any wrongdoing or liability by Defendants, or give rise to any inference of wrongdoing or admission of wrongdoing or liability in this or any other proceeding.

10.2. This Settlement Agreement and the payments made hereunder are made in compromise of disputed claims and are not admissions of any liability of any kind, whether legal or factual. Defendants and Obligee(s) specifically deny any such liability or wrongdoing and state that they are entering into this Settlement Agreement to eliminate the burden and expense of further litigation. Further, the Class Representatives, while believing that the claims brought in the Class Action have merit, have concluded that the terms of this Settlement Agreement are fair, reasonable, and adequate to the Plans, themselves and members of the Settlement Classes given, among other things, the inherent risks, difficulties and delays in complex ERISA litigation such as the Class Action. Neither the fact nor the terms of this Settlement Agreement shall be used or offered or received in evidence in any action or proceeding for any purpose, except in an action or proceeding to enforce this Settlement Agreement or arising out of or relating to the Final Order.

## 11. ARTICLE 11 – CONDITIONS TO FINALITY OF SETTLEMENT

11.1. This Settlement shall be contingent upon each of the following conditions in this Article 11 being satisfied. The Settling Parties agree that if any of these conditions is not satisfied, then this Settlement Agreement is terminated (subject to Defendants' right to waive the condition set forth in Section 11.4) and the Class Action will, for all purposes with respect to the Settling Parties, revert to its status as of the Settlement Agreement Execution Date.

11.2. Court Approval and Class Certification for Settlement Purposes. The Court shall have re-certified the Settlement Classes for settlement purposes only (and Defendants will not object to this certification for settlement purposes), the Settlement shall have been approved by the Court, the Court shall have entered the Final Order substantially in the form attached as Exhibit D hereto, and the Settlement Effective Date shall have occurred.

11.3. Finality of Settlement. The Settlement shall have become Final.

11.4. Resolution of CAFA Objections (If Any). In the event that any of the government officials who received a CAFA Notice object to and request modifications to the Settlement, Class Representatives and Class Counsel agree to cooperate and work with Defendants and Defense Counsel to overcome such objection(s) and requested modifications. In the event such objection(s) or requested modifications are not overcome, Defendants shall have the right to terminate the Settlement Agreement pursuant to Article 12.

11.5. Settlement Authorized by Independent Fiduciary. At least ten (10) calendar days before the Fairness Hearing, the Independent Fiduciary shall have approved and authorized in writing the Settlement, and given a release to all of the Released Parties in its capacity as fiduciary of the Plans for and on behalf of the Plans in accordance with PTE 2003-39. If the Independent Fiduciary disapproves or otherwise does not authorize the Settlement or refuses to execute the release on behalf of the Plans, then the Settling Parties may mutually agree to modify the terms of this Settlement Agreement as necessary to facilitate an approval by the Independent Fiduciary and/or the Independent Fiduciary's release on behalf of the Plans. Otherwise, Defendants shall have the option to waive this condition, in which case such option is to be exercised in writing within five (5) calendar days after the Settling Parties' receipt of the Independent Fiduciary's written determination, unless otherwise agreed by the Settling Parties.

11.6. At their sole discretion, Defendants shall have the right to withdraw from this Settlement and terminate the Agreement if:

(a) On or before fourteen (14) calendar days before the Fairness Hearing, the United States Department of Labor files any objection to the Agreement or Settlement in any court, brings a claim against any Released Parties relating to the Released Claims, or notifies any Released Party that it intends to file such a Claim;

(b) At any time, another party files a separate class action that raises comparable claims against the same Released Parties during some part of the same class period addressed by the First Amended Complaint.

**12. ARTICLE 12 – TERMINATION, CONDITIONS OF SETTLEMENT, AND EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION**

12.1. The Settlement Agreement shall automatically terminate, and thereby become null and void with no further force or effect if:

12.1.1. Under Section 2.1, (a) either the Independent Fiduciary does not approve the Settlement Agreement or disapproves the Settlement Agreement for any reason whatsoever, or Defendants reasonably conclude that the Independent Fiduciary's approval does not include the determinations required by the PTE 2003-39; and (b) the Settling Parties do not mutually

agree to modify the terms of this Settlement Agreement to facilitate an approval by the Independent Fiduciary or the Independent Fiduciary's determinations required by PTE 2003-39; and (c) Defendants do not exercise their option to waive this condition as provided in Section 11.5;

12.1.2. The Preliminary Approval Order or the Final Order is not entered by the Court in substantially the form submitted by the Settling Parties or in a form which is otherwise agreed to by the Settling Parties;

12.1.3. The Settlement Classes are not certified as defined herein or in a form which is otherwise agreed to by the Settling Parties;

12.1.4. This Settlement Agreement is disapproved by the Court or fails to become effective and the Settling Parties do not mutually agree to modify the Settlement Agreement in order to obtain the Court's approval or otherwise effectuate the Settlement; or

12.1.5. The Preliminary Order or Final Order is finally reversed on appeal, or is modified on appeal, and the Settling Parties do not mutually agree to any such modifications.

12.2. If the Settlement Agreement is terminated, deemed null and void, or has no further force or effect, the Class Action and the Released Claims asserted by the Class Representatives shall for all purposes with respect to the Settling Parties revert to their status as though the Settling Parties never executed the Settlement Agreement. The entirety of the Gross Settlement Amount paid to Plaintiffs, and any interest earned thereon, shall be returned to Defendants or their insurer(s) or Obligee(s) within thirty (30) calendar days after the Settlement Agreement is finally terminated or deemed null and void.

12.3. It shall not be deemed a failure to approve the Settlement Agreement if the Court denies, in whole or in part, Class Counsel's request for Attorneys' Fees and Costs, Class Representative Service Awards, and/or Administrative Expenses and/or modifies any of the proposed orders relating to Attorneys' Fees and Costs, Class Representative Service Awards, and/or Administrative Expenses.

## 13. ARTICLE 13 – CONFIDENTIALITY OF THE SETTLEMENT NEGOTIATIONS AND PERMITTED SETTLEMENT-RELATED COMMUNICATIONS

13.1. Except as set forth explicitly below, the Settling Parties, Class Counsel, and Defense Counsel agree to keep confidential all positions, assertions, and offers made during settlement negotiations relating to the Class Action and the Settlement Agreement, except that they may discuss the negotiations with the Class Members, the Independent Fiduciary, and the Settling Parties' auditors, tax, legal, and regulatory advisors, and in connection with the Defendants', their assignees' or their Obligees' pursuit of insurance coverage or other associated rights, including in litigation, provided in each case that they (a) secure written

agreements with such persons or entities that such information shall not be further disclosed to the extent such persons are not already bound by confidentiality obligations at least as restrictive as those in this Article 13 and which would otherwise cover the Settlement Agreement; and (b) comply with this Article 13 in all other respects.

13.2. Defendants, Class Representatives, Class Counsel, and Defense Counsel agree that they will not at any time make (or encourage or induce others to make) any public statement regarding the Class Action or the Settlement that disparages any Released Party; provided, however, that this prohibition does not preclude Class Counsel from restating the allegations made in the First Amended Complaint for purposes of the motion for preliminary approval of the Settlement, motion for final approval of the Settlement, or the request for Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses. This prohibition does not prohibit any Settling Party from making any statements pursuant to a valid legal process, a request by a regulatory agency, or as required by law.

13.3. Defendants, Class Representatives, Class Counsel, and Defense Counsel agree that they will not publicly disclose the terms of the Settlement until after the motion for preliminary approval of the Settlement has been filed with the Court, other than as necessary to administer or effectuate the Settlement, or unless such disclosure is pursuant to a valid legal process, a request by a regulatory agency, or as otherwise required by law, government regulations including corporate reporting obligations, or order of the Court.

## 14. ARTICLE 14 – GENERAL PROVISIONS

14.1. The Settling Parties agree to cooperate fully with each other in seeking Court approvals of the Preliminary Approval Order and the Final Order, and to do all things as may reasonably be required to effectuate preliminary and final approval and the implementation of this Settlement Agreement according to its terms. The Settling Parties agree to provide each other with copies of any filings necessary to effectuate this Settlement reasonably in advance of filing.

14.2. This Settlement Agreement, whether or not consummated, and any negotiations or proceedings hereunder are not, and shall not be construed as, deemed to be, or offered or received as evidence of an admission by or on the part of any Released Party of any wrongdoing, fault, or liability whatsoever by any Released Party, or give rise to any inference of any wrongdoing, fault, or liability or admission of any wrongdoing, fault, or liability in the Class Action or any other proceeding.

14.3. Defendants and Released Parties admit no wrongdoing, fault, or liability with respect to any of the allegations or claims in the Class Action. This Settlement Agreement, whether or not consummated, and any negotiations or proceedings hereunder, shall not constitute admissions of any liability of any kind, whether legal or factual. Subject to Federal Rule of Evidence 408, the Settlement and the

negotiations related to it are not admissible as substantive evidence, for purposes of impeachment, or for any other purpose.

14.4. Defendants deny all allegations of wrongdoing. Defendants believe that the Plans have been managed, operated, and administered at all relevant times reasonably, lawfully, and prudently, in the best interest of the Plans' participants, and in accordance with ERISA, including the fiduciary duty and prohibited transaction provisions of ERISA.

14.5. Neither the Settling Parties, Obligee(s), Class Counsel, nor Defense Counsel shall have any responsibility for or liability whatsoever with respect to (a) any act, omission, or determination of the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Gross Settlement Amount or otherwise; (b) the determination of the Independent Fiduciary; (c) the management, investment, or distribution of the Qualified Settlement Fund; (d) the Plan of Allocation as approved by the Court; (e) the determination, administration, calculation, or payment of any claims asserted against the Qualified Settlement Fund; (f) any losses suffered by, or fluctuations in the value of, the Qualified Settlement Fund; or (g) the payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Qualified Settlement Fund or tax reporting, or the filing of any returns. Further, neither Defendants nor Defense Counsel shall have any responsibility for, or liability whatsoever with respect to, any act, omission, or determination of Class Counsel in connection with the administration of the Gross Settlement Amount or otherwise.

14.6. The Released Parties shall not have any responsibility for or liability whatsoever with respect to the Plan of Allocation, including, but not limited to, the determination of the Plan of Allocation or the reasonableness of the Plan of Allocation.

14.7. The Settling Parties acknowledge that any payments to Class Members or their attorneys may be subject to applicable tax laws. Defendants, Defense Counsel, Class Counsel, and Class Representatives will provide no tax advice to the Class Members and make no representation regarding the tax consequences of any of the settlement payments described in the Settlement Agreement. To the extent that any portion of any settlement payment is subject to income or other tax, the recipient of the payment shall be responsible for payment of such tax. Deductions will be made, and reporting will be performed by the Settlement Administrator, as required by law with respect to all payments made under the Settlement Agreement. Distributions from the Qualified Settlement Fund shall not be treated as wages by the Settling Parties.

14.8. Each Class Member who receives a distribution under this Settlement Agreement shall be fully and ultimately responsible for payment of any and all federal, state, or local taxes resulting from or attributable to the distribution received by such person. Each such Class Member shall hold the Released Parties, Defense

Counsel, Class Counsel, and the Settlement Administrator harmless from any tax liability, including penalties and interest, related in any way to payments under the Settlement Agreement, and shall hold the Released Parties, Defense Counsel, Class Counsel, and the Settlement Administrator harmless from the costs (including, for example, attorneys' fees and disbursements) of any proceedings (including, for example, investigation and suit), related to such tax liability.

14.9. Only Class Counsel shall have standing to seek enforcement of this Settlement Agreement on behalf of Plaintiffs and Class Members. Any individual concerned about Defendants' compliance with this Settlement Agreement may so notify Class Counsel and direct any requests for enforcement to them. Class Counsel shall have the full and sole discretion to take whatever action they deem appropriate, or to refrain from taking any action, in response to such request. Any action by Class Counsel to monitor or enforce the Settlement Agreement shall be done without additional fee or reimbursement of expenses beyond the Attorneys' Fees and Costs determined by the Court.

14.10. This Settlement Agreement shall be interpreted, construed, and enforced in accordance with applicable federal law and, to the extent that federal law does not govern, Washington law, without giving effect to any conflict of law provisions that would cause the application of the laws of any jurisdiction other than Washington.

14.11. The Settling Parties agree that the Court has personal jurisdiction over the Settlement Classes and Defendants and shall maintain personal and subject-matter jurisdiction for purposes of resolving any disputes between the Settling Parties concerning compliance with this Settlement Agreement. Any motion or action to enforce this Settlement Agreement—including by way of injunction—may be filed in the U.S. District Court for the Western District of Washington, or asserted by way of an affirmative defense or counterclaim in response to any action asserting a violation of the Settlement Agreement.

14.12. Each party to this Settlement Agreement hereby acknowledges that he, she, or it has consulted with and obtained the advice of counsel prior to executing this Settlement Agreement and that this Settlement Agreement has been explained to that party by his, her, or its counsel.

14.13. Before entry of the Preliminary Approval Order, this Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Settling Parties. Following entry of the Preliminary Approval Order and approval by the Independent Fiduciary, this Settlement Agreement may be modified or amended only if such modification or amendment is set forth in a written agreement signed by or on behalf of all Settling Parties, and only if such modification or amendment is approved in writing by the Independent Fiduciary and the Court.

14.14. The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving party and specifically waiving such provisions. The waiver of any breach of this Settlement Agreement by any party shall not be deemed to be or construed as a waiver of any other breach or waiver by any other party, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

14.15. Each of the Settling Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that it will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter of this Settlement Agreement.

14.16. All of the exhibits attached hereto are incorporated by reference as though fully set forth herein. The exhibits shall be: Exhibit A – Notice of Class Action Settlement and Fairness Hearing; Exhibit B – Rollover Form; Exhibit C – Preliminary Approval Order; Exhibit D – Final Approval Order, Exhibit E – CAFA Notice.

14.17. No provision of the Settlement Agreement or of the exhibits attached hereto shall be construed against or interpreted to the disadvantage of any party to the Settlement Agreement because that party is deemed to have prepared, structured, drafted, or requested the provision.

14.18. Principles of Interpretation. The following principles of interpretation apply to this Settlement Agreement:

14.18.1. Headings. Any headings included in this Settlement Agreement are for convenience only and do not in any way limit, alter, or affect the matters contained in this Settlement Agreement or the Articles or Sections they caption.

14.18.2. Singular and Plural. Definitions apply to the singular and plural forms of each term defined.

14.18.3. Gender. Definitions apply to the masculine, feminine, and neuter genders of each term defined.

14.18.4. References to a Person. References to a Person are also to the Person's permitted successors and assigns, except as otherwise provided herein.

14.18.5. Terms of Inclusion. Whenever the words "include," "includes," or "including" are used in this Settlement Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

14.19. Survival. All of the covenants, representations, and warranties, express or implied, oral or written, concerning the subject matter of this Settlement Agreement are

contained in this Settlement Agreement. No Party is relying on any oral representations or oral agreements. All such covenants, representations, and warranties set forth in this Settlement Agreement shall be deemed continuing and shall survive the Settlement Effective Date.

14.20. Notices. Any notice, demand, or other communication under this Settlement Agreement (other than the Settlement Notice, or other notices given at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail postage prepaid, or delivered by reputable express overnight courier or via e-mail:

IF TO CLASS REPRESENTATIVES:

Mark Thomson
Engstrom Lee LLC
323 N. Washington Ave., Ste 200
Minneapolis, MN 55401
Tel: (612) 305-8349
Fax: (612) 677-3050
mthomson@engstromlee.com

IF TO DEFENDANTS:

Amanda Morgan
DLA Piper LLP (US).
555 Mission St, Suite 2400
San Francisco, CA 94105-2933
Tel: 415836.2500
amanda.morgan@us.dlapiper.com

William J. Delany
Groom Law Group, Chartered
1701 Pennsylvania Ave. NW
Washington, DC 20006
Tel: (202) 857-0620
Fax: (202) 659-4503
wdelany@groom.com

14.21. Any Settling Party may change the address at which it is to receive notice by written notice delivered to the other Settling Parties in the manner described above.

14.22. Entire Agreement. This Settlement Agreement and the exhibits attached hereto constitute the entire agreement among the Settling Parties and no representations, warranties, or inducements have been made to any party concerning the Settlement

other than those contained in this Settlement Agreement and the exhibits thereto. It specifically supersedes any settlement terms or settlement agreements relating to the Defendants that were previously agreed upon orally or in writing by any of the Settling Parties.

14.23. Counterparts. The Settlement Agreement may be executed by exchange of executed signature pages, and any signature transmitted by facsimile or e-mail attachment of scanned signature pages for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement. The Settlement Agreement may be executed in any number of counterparts, and each of such counterparts shall for all purposes be deemed an original, and all such counterparts shall together constitute the same instrument.

14.24. Binding Effect. This Settlement Agreement binds and inures to the benefit of the Settling Parties hereto, their Obligee(s), assigns, heirs, administrators, executors, and successors.

14.25. Destruction/Return of Confidential Information. Within thirty (30) days after the Final Order, Class Representatives and Class Counsel shall fully comply with any Stipulated Protective Order entered in this case. Further, the Settling Parties agree that the preliminary and final lists of Class Members are deemed Confidential. Further, the Settling Parties shall have the right to continue to designate documents provided to any party in connection with this Settlement Agreement as Confidential pursuant to this paragraph or pursuant to any Stipulated Protective Order entered in this case.

14.26. IN WITNESS WHEREOF, the Settling Parties have executed this Settlement Agreement on the dates set forth below.

Date: October 9, 2026

On Behalf of Plaintiffs, Individually and as Representatives of the Settlement Classes:

Mark Thomson
Engstrom Lee LLC
323 N. Washington Ave., Ste 200
Minneapolis, MN 55401
Tel: (612) 305-8349

*Class Counsel*

Date: October 9, 2026

On Behalf of Board Defendants:

William J. Delany
Groom Law Group, Chartered
1701 Pennsylvania Ave. NW
Washington, DC 20006
Tel: (202) 857-0620

Date: October 9, 2026

On Behalf of Callan:

Brian Benjet
DLA Piper LLP (US)
1650 Market Street
Suite 5000
Philadelphia, PA 19103
Tel: 215 656-3311

# EXHIBIT A

# NOTICE OF CLASS ACTION SETTLEMENT

***in***

# Carpenters of Western Washington ERISA Litigation

***Johnson et al. v. Carpenters of Western Washington Board of Trustees et al.*, Case No. 2:22-cv-01079-JHC (W.D. Wash.)**

**PLEASE READ THIS SETTLEMENT NOTICE CAREFULLY.**
**This is a notice of a proposed class action settlement in the above-referenced lawsuit.**
**If you are a member of the Settlement Classes, the settlement will affect your legal rights.**
**This is <u>not</u> a solicitation from a lawyer.**
**You have <u>not</u> been sued.**

- A Settlement has been reached in a class action lawsuit with respect to the Southwest Carpenters Retirement Savings Plan ("IAP") and Western States Carpenters Pension Plan ("Retirement Plan") and each of their predecessor plans that were merged and/or acquired, individually and collectively, and any trust created under each such plan (together, the "Plans"). The class action lawsuit involves whether the Plans have been administered by Defendants Carpenters of Western Washington Board of Trustees and its individual members (the "Board Defendants") and Callan LLC ("Callan") in accordance with certain provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"). ERISA is the federal law that regulates and sets minimum standards for the administration of most retirement plans in the private sector, including the Plans. Defendants deny all claims, and nothing in the Settlement is an admission or concession on Defendants' part of any fault or liability whatsoever.

- The Settlement will provide for a $9.25 million Qualified Settlement Fund that will be allocated to eligible Settlement Class Members after any Court-approved deductions for Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses.

- <u>IAP Settlement Awards</u>. IAP Class Members who have an IAP account with a balance when settlement payments are calculated ("Current Participants") will have their share deposited directly into their IAP accounts. They do not need to do anything. IAP Class Members who are not Current Participants ("Former Participants") will receive their share by check, unless they submit a Rollover Form to have it rolled over to an individual retirement account or other eligible employer plan. **A Rollover Form allowing you to elect to receive your distribution in the form of a rollover is attached to this Notice.**

- <u>Retirement Plan Settlement Awards</u>. How you receive your share depends on when your Retirement Plan benefit is fully paid out. If your benefit has not been fully paid out when settlement payments begin, you will receive a supplemental credit of additional Sustainable Income Benefit ("SIB") Units in the Retirement Plan, and you do not need to do anything. If your benefit was fully paid out on or before the Settlement Effective Date—the date the Court's final approval can no longer be appealed—you will receive a cash payment instead, which you may elect to roll over to an individual retirement account or other eligible employer plan by submitting a Rollover Form. If your benefit is fully paid out after the Settlement Effective Date but before settlement payments begin, you will receive a taxable cash payment by check, which cannot be rolled over. A Rollover Form is attached to this Notice.

- The terms and conditions of the Settlement are set forth in the Settlement Agreement dated [DATE]. Capitalized terms used in this Notice but not defined in this Notice have the meanings assigned to them in the Settlement Agreement. The Settlement Agreement is available at [www.settlementwebsite.com]. Certain other documents also will be posted on that website. You should visit that website if you would like more information about the Settlement or the lawsuit. All papers filed in this lawsuit are also available for review via the Public Access to Court Electronic Records System (PACER), at https://pacer.uscourts.gov.

- The Settlement Classes are defined as follows: the "Retirement Plan Class" means all participants and beneficiaries of the Retirement Plan at any time from August 2, 2016 to May 7, 2020, excluding the Defendants; and the "IAP Class" means all participants and beneficiaries of the IAP at any time from August 2, 2016 to May 7, 2020, excluding the Defendants.

- Your rights and the choices available to you—and the applicable deadlines to act—are explained in this Notice. Please note that neither Defendants nor any employees, attorneys, or representatives of Defendants may advise you as to what the best choice is for you or how you should proceed.

- The Court still has to decide whether to give its final approval to the Settlement. Payments under the Settlement will be made only if the Court finally approves the Settlement, and that final approval is upheld in the event of any appeal.

- A Fairness Hearing will take place on [DATE], at [TIME], before the Honorable John H. Chun, United States District Court for the Western District of Washington, United States Courthouse, 700 Stewart Street, Seattle, WA 98101, in Courtroom XX, to determine whether to grant final approval of the Settlement and approve the requested Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses. If the Fairness Hearing is rescheduled, or if it is held by video conference or telephone, a notice will be posted on the Settlement Website at [www.settlementwebsite.com].

- Any objections to the Settlement, or to the requested Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses must be filed with the Court and mailed to Class Counsel and Defendants' counsel, as identified under question 11 of this Settlement Notice.

| **YOUR LEGAL RIGHTS AND OPTIONS UNDER THE SETTLEMENT:** | |
|---|---|
| **If you are a Current Participant in the IAP:** | You do not need to do anything to receive your share of the Net Settlement Amount. If, however, you do not have an account in the IAP at the time that distributions are made, you will receive your settlement distribution in the form of a check or rollover, if elected. |
| **If you are not a Current Participant in the IAP:** | You do not need to do anything to receive your share of the Net Settlement Amount by check. However, if you wish to receive your share of the Net Settlement Amount via a rollover to an individual retirement account or other tax-qualified plan, then you must submit a Rollover Form postmarked on or before [DATE]. A Rollover Form is attached to this Notice and also may |

| | |
|---|---|
| | be obtained by calling the Settlement Administrator at [telephone number] or by accessing [www.settlementwebsite.com]. |
| **If your Retirement Plan benefit has not been fully paid out:** | You do not need to do anything. You will receive your share of the Net Settlement Amount as a supplemental credit to your SIB Units. If your benefit is fully paid out after the Settlement Effective Date but before settlement payments begin, you will instead receive a taxable cash payment by check, which cannot be rolled over. |
| **If your Retirement Plan benefit was fully paid out on or before the Settlement Effective Date:** | You do not need to do anything to receive your share of the Net Settlement Amount as a cash payment by check. However, if you wish to receive your share of the Net Settlement Amount via a rollover to an individual retirement account or other tax-qualified plan, you must submit a Rollover Form postmarked on or before [DATE]. A Rollover Form is attached to this Notice and also may be obtained by calling the Settlement Administrator at [telephone number] or by accessing [www.settlementwebsite.com]. |
| **You can object (no later than [DATE])** | If you wish to object to any part of the Settlement, or to the requested Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses, you must file and postmark your objection and any supporting documents with the Clerk of the Court, and mail copies to Class Counsel and Defendants' counsel (as identified under question 11 below) at least 21 calendar days before the Fairness Hearing. Please note that you will not be permitted to make an objection to the Settlement if you do not comply with the requirements for making objections. |
| **You can attend a hearing on [DATE]** | You may also attend the Fairness Hearing and speak at the Fairness Hearing on [DATE]. If you wish to attend the hearing and speak at the hearing, you must file a notice of your intent to appear with the Clerk of the Court and mail copies to Class Counsel and Defendants' counsel (as identified under question 11 below) postmarked at least 21 calendar days before the Fairness Hearing. Please note that you will not be permitted to speak at the Fairness Hearing if you do not comply with the requirements for giving notice of your intent to appear. |

## The Class Action

The case is called *Johnson et al. v. Carpenters of Western Washington Board of Trustees et al.*, Case No. 2:22-cv-01079-JHC (W.D. Wash.). It has been pending since August 2, 2022. The Court supervising the case is the United States District Court for the Western District of Washington. The individuals who brought this lawsuit are called the Plaintiffs or Class Representatives, and the people and entities that were sued are called the Defendants. Plaintiffs Terrance Johnson, Brent Yahraus, and Jacy Purkiss are current and former participants in the Plans. Defendants are Callan LLC, Carpenters of Western Washington Board of Trustees, Gerald Auvil, Noe Castillo, Ken Ervin, Jeff Foushee, Kurt Hildebrand, Steve Hoffmann, Martin Holberg, Dan Hutchins, Ryan Hyke, Andrew Ledbetter, Ron Montoya, Jim Osborne, Tim O'Neill, Doug Peterson, Rick Poitras, Danny Robins, Evelyn Shapiro, Bob Susee, Jeff Thorson, Doug Tweedy, and Wilf Wainhouse.

The claims in the lawsuit are described below under question 2, and additional information about them, including a copy of the operative Complaint, is available at [www.settlementwebsite.com].

**The Settlement**

Following negotiations between Plaintiffs, Class Counsel, Defendants, and Defendants' counsel, a Settlement has been reached. As part of the Settlement, a Qualified Settlement Fund of $9,250,000.00 will be established to resolve the claims against Defendants in the Action. The "Net Settlement Amount" is $9,250,000.00 minus any Court-approved Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses, and a reserve for future administrative costs. The Net Settlement Amount will be allocated to Settlement Class Members according to a Plan of Allocation to be approved by the Court and further described below.

**Statement of Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses Sought in the Class Action**

Class Counsel has devoted many hours to investigating the facts, prosecuting the lawsuit, briefing dispositive motions, winning an appeal, reviewing documents, and negotiating the Settlement. During that time, they also have advanced costs necessary to pursue the case. Class Counsel took the risk of litigation and have not been paid for any of their time or for any of these costs throughout the time this case has been pending.

Class Counsel will apply to the Court for payment of Attorneys' Fees for their work in the case. The amount of fees that Class Counsel will request will not exceed one-third of the Qualified Settlement Fund ($3,083,333.33). In addition, Class Counsel will seek to recover their litigation costs and administrative expenses associated with the Settlement. Administrative Expenses, including the fees of the Settlement Administrator and the Independent Fiduciary, also will be paid from the Qualified Settlement Fund. Any Attorneys' Fees and Costs and Administrative Expenses awarded by the Court will be paid from the Qualified Settlement Fund.

Class Counsel also will ask the Court to approve payments, not to exceed $10,000 for each of the three Class Representatives ($30,000 total), who aided in the investigation, took on the risk of litigation, and committed to spend the time necessary to bring the case to conclusion, including appearing at trial. Their activities also included assisting in the factual investigation of the case by Class Counsel, producing documents, and giving overall support to the case. Any Class Representative Service Awards awarded by the Court will be paid from the Qualified Settlement Fund.

A full and formal application for Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses will be filed with the Court on or before [DATE]. This application will be made available at [www.settlementwebsite.com]. You may also obtain a copy of this application through the Public Access to Court Electronic Records System (PACER) at https://pacer.uscourts.gov, or by appearing in person during regular business hours at the U.S. District Court Clerk's Office, United States Courthouse, 700 Stewart Street, Suite 2310, Seattle, WA 98101.

## 1. Why Did I Receive This Settlement Notice?

The Court caused this Notice to be sent to you because our records indicate that you may be a Settlement Class Member. If you fall within the definition of the Settlement Classes, you have a right to know about the Settlement and about all of the options available to you before the Court decides whether to give its final approval to the Settlement. If the Court approves the Settlement, and after any objections and appeals are resolved, the Net Settlement Amount will be allocated among Settlement Class Members according to a Court-approved Plan of Allocation.

## 2. What Is the Class Action About?

In the Class Action, Plaintiffs claim that Defendants breached their fiduciary duties under ERISA, and related state-law duties, by investing the Plans in, and failing to prudently monitor, the AllianzGI Structured Alpha U.S. Equity 250 LLC and AllianzGI Structured Alpha 1000 Plus LLC funds, which lost much of their value in early 2020. Defendants deny all claims and assert that they have always acted prudently and in the best interests of participants and beneficiaries.

## 3. Why Is There A Settlement?

The Court has not reached a final decision as to Plaintiffs' claims. Instead, Plaintiffs and Defendants have agreed to the Settlement. The Settlement is the product of extensive negotiations between the Class Representatives, Defendants, and their counsel. The parties to the Settlement have taken into account the uncertainty, risks, and costs of litigation and have concluded that it is desirable to settle on the terms and conditions set forth in the Settlement Agreement. Plaintiffs and Class Counsel believe that the Settlement is best for the Settlement Classes. Nothing in the Settlement Agreement is an admission or concession on Defendants' part of any fault or liability whatsoever. They have entered into the Settlement Agreement to avoid the uncertainty, expense, and burden of additional litigation.

## 4. What Does the Settlement Provide?

Under the Settlement, Callan and/or its insurers will pay $5,000,000.00 and the Board Defendants and/or their insurers will pay $4,250,000.00 into a Qualified Settlement Fund to resolve the claims of the Settlement Classes against Defendants. The Net Settlement Amount (after deduction of any Court-approved Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses) will be allocated to Settlement Class Members according to a Plan of Allocation to be approved by the Court (as explained further under question 5 below). Settlement Class Members who are entitled to a distribution may receive their distribution directly into their IAP accounts, as a supplemental SIB credit in the Retirement Plan, as a check or, if they choose and as applicable, as a rollover to a qualified retirement account.

All Settlement Class Members and anyone claiming through them will fully release Defendants and the Released Parties from certain Released Claims, as defined in the Settlement Agreement. The Released Parties include each Defendant and certain related parties as outlined in the Settlement Agreement. The Released Claims include any claims against any of the Released Parties with respect to the Plans that were asserted in the Action against Defendants or could have been asserted against Defendants.

This is *only* a summary of the Released Claims and is not a binding description. The governing releases are found within the Settlement Agreement, which is available at [www.settlementwebsite.com].

## 5. How Much Will My Distribution Be?

The amount, if any, that will be allocated to you will be based upon records maintained by the Plans' Recordkeeper(s) and/or actuary. Calculations regarding individual distributions will be performed by the Settlement Administrator, whose determinations will be final and binding, pursuant to the Court-approved Plan of Allocation.

To receive a distribution from the Net Settlement Amount, you must be a "Settlement Class Member" as defined above.

The Net Settlement Amount will first be divided between the IAP Class and the Retirement Plan Class based on each Plan's investment in the two Allianz funds on December 31, 2019. Within the IAP Class, your share is based on your IAP account balance on December 31, 2019. Within the Retirement Plan Class, your share is based on your SIB Units on December 31, 2019. If you had no IAP balance or no SIB Units on that date, you will not receive a payment from that Plan's share. If a check or cash payment to you would be less than $5.00, you will not receive it, and that amount stays with your Class. A more complete description of the Plan of Allocation is in Article 5 of the Settlement Agreement, which is available at [www.settlementwebsite.com].

## 6. How Can I Receive My Distribution?

**If you are a Current Participant in the IAP, you do not need to do anything to receive your IAP share; it will be deposited into your IAP account. If your Retirement Plan benefit has not been fully paid out when settlement payments begin, you do not need to do anything to receive your Retirement Plan share; it will be applied as a supplemental credit to your SIB Units.**

**If you are <u>not</u> a Current Participant in the IAP, you can receive your share of the Net Settlement Amount via a rollover to an individual retirement account or other tax-qualified retirement account. To do so, you must submit a Rollover Form.** A Rollover Form is attached to this Notice and explains the steps necessary to receive your distribution via rollover. You may also obtain the Rollover Form on the Settlement Website at [www.settlementwebsite.com] or by calling the Settlement Administrator at [telephone number]. If you are not a Current Participant and do not submit a timely, valid Rollover Form, you will receive your distribution via check. More information regarding your rollover options is at the end of this Notice.

**If your Retirement Plan benefit was fully paid out on or before the Settlement Effective Date**, you will receive your settlement distribution related to the Retirement Plan in the form of a check. However, if you wish to receive your Retirement Plan settlement distribution via a rollover to an individual retirement account or other tax-qualified retirement account, you must submit a Rollover Form. A Rollover Form is attached to this Notice and explains the steps necessary to receive your distribution via rollover. You may also obtain the Rollover Form on the Settlement Website at [www.settlementwebsite.com] or by calling the Settlement Administrator at [telephone number]. If your benefit was fully paid out on or before the Settlement Effective Date and you do not submit a timely, valid Rollover Form, you will receive your distribution via check. More

information regarding your rollover options is at the end of this Notice. If your Retirement Plan benefit is fully paid out after the Settlement Effective Date but before settlement payments begin, you will receive a taxable cash payment by check. That payment cannot be rolled over.

## 7. When Will I Receive My Distribution?

The timing of the distribution of the Net Settlement Amount is conditioned on several matters, including the Court's final approval of the Settlement and any approval becoming final and no longer subject to any appeals in any court. An appeal of the final approval order may take several years. If the Settlement is approved by the Court and there are no appeals, the Settlement distribution likely will occur within approximately four months of the Court's Final Approval Order, unless there are unforeseen circumstances. There will be no payments under the Settlement if the Settlement Agreement is terminated.

## 8. Can I Exclude Myself from The Settlement?

No. The Settlement Class has been certified for settlement purposes under Federal Rule of Civil Procedure 23(b)(1). Therefore, as a Settlement Class Member, you are bound by the Settlement (if it receives final Court approval) and any judgments or orders that are entered in the Action. If you wish to object to any part of the Settlement, you may write to the Court, Class Counsel, and Defendants' counsel about why you object to the Settlement, as discussed below.

## 9. Do I Have A Lawyer in The Case?

The Court has appointed the law firms of Engstrom Lee LLC in Minneapolis, Minnesota, and Skiermont Derby LLP in Los Angeles, California, as Class Counsel in the Class Action. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 10. How Will the Lawyers Be Paid?

Class Counsel will file a motion for an award of Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses at least 30 days prior to the objection deadline. This motion will be considered at the Fairness Hearing. Class Counsel will limit their application for Attorneys' Fees to not more than one-third of the Qualified Settlement Fund. Class Counsel also will ask to be reimbursed for their litigation costs, and the Court will be asked to approve Administrative Expenses paid from the Qualified Settlement Fund. The Court will determine the amount of fees, costs, and administrative expenses that will be awarded, if any. All papers filed in this Action, including Class Counsel's motion for Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses will be posted on the Settlement Website and will be available for review via the Public Access to Court Electronic Records System (PACER), available online at https://pacer.uscourts.gov.

## 11. How Do I Tell the Court If I Don't Like the Settlement?

If you are a Settlement Class Member, you can object to the Settlement by mailing to Class Counsel and to Defendants' counsel at the addresses below a written objection explaining why you object and any supporting documents. Your written objection must: (1) clearly identify the case name and number: *Johnson v. Carpenters of Western Washington Board of Trustees*, Case No. 2:22-cv-01079-JHC (W.D. Wash.); (2) include your full name, current address, and telephone number; (3)

state whether your objection applies only to you, to a specific part of the Settlement Classes, or to all of the Settlement Classes; (4) describe the position you wish to assert, including the factual and legal grounds for the position; (5) provide copies of all documents that you wish to submit in support of your position; (6) provide the name(s), address(es) and phone number(s) of any attorney(s) representing you; and (7) include your signature. Your written objection and supporting documents must be mailed to Class Counsel and Defendants' counsel and postmarked no later than [DATE] to be considered. Class Counsel and Defendants will have an opportunity to respond to your objection. You also must file your objection with the Court by mailing or delivering to the U.S. District Court Clerk's Office, United States Courthouse, 700 Stewart Street, Suite 2310, Seattle, WA 98101.

| CLASS COUNSEL | DEFENDANTS' COUNSEL |
| --- | --- |
| Mark Thomson<br>**ENGSTROM LEE LLC**<br>323 N. Washington Ave., Ste. 200<br>Minneapolis, MN 55401 | Anthony Todaro (Counsel for Callan)<br>**DLA Piper LLP (US)**<br>701 Fifth Avenue, Suite 6900<br>Seattle, WA 98104-7029<br><br>William J. Delany (Counsel for the Board Defendants)<br>**Groom Law Group, Chartered**<br>1701 Pennsylvania Ave. NW<br>Washington, DC 20006 |

## 12. When and Where Will the Court Decide Whether to Approve the Settlement?

The Court will hold a Fairness Hearing at **[TIME]** on **[DATE]**, at United States District Court for the Western District of Washington, United States Courthouse, 700 Stewart Street, Seattle, WA 98101, in Courtroom XX. At the Fairness Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court also will consider the motion for Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses. If there are objections, the Court will consider them then. Please note that if the Fairness Hearing is rescheduled, or if it is held by video conference or telephone, a notice will be posted on the Settlement Website at [www.settlementwebsite.com].

## 13. Do I Have to Attend the Fairness Hearing?

No, but you are welcome to come at your own expense. You may also make an appearance through an attorney at your own expense. If you send an objection, you do not have to come to the Court to talk about it. As long as you filed and mailed your written objection on time, the Court will consider it.

## 14. May I Speak at The Fairness Hearing?

Yes. If you wish to attend the hearing and speak at the hearing, you must file a notice of intent to appear with the Clerk of the Court, and mail copies to Class Counsel and Defendants' counsel (as identified under question 11), at least 21 calendar days before the Fairness Hearing. You must also

comply with the requirements for making an objection (described above) if you wish to object to the Settlement.

## 15. What Happens If I Do Nothing at All?

If you do nothing, you will still be bound by the Settlement if the Court approves it, and you will give up the Released Claims described in question 4. If you are a "Current Participant" in the IAP and you do nothing, you will receive your *pro rata* share of the Net Settlement Amount deposited into your individual account in the IAP. If your Retirement Plan benefit has not been fully paid out when settlement payments begin and you do nothing, you will receive a supplemental credit to your Sustainable Income Benefit Units.

If you are not a Current Participant in the IAP, and you do nothing, you will receive your *pro rata* share of the Net Settlement Amount via check if you do not submit a Rollover Form and the Settlement is finally approved. If your Retirement Plan benefit was fully paid out on or before the Settlement Effective Date and you do nothing, you will receive a check; to receive a rollover instead, you must submit a Rollover Form before the deadline. If your Retirement Plan benefit is fully paid out after the Settlement Effective Date but before settlement payments begin, you will receive a taxable cash payment by check; no rollover option is available for your Retirement Plan distribution.

## 16. How Do I Get More Information?

If you have questions regarding the Settlement, you can visit [www.settlementwebsite.com], call [phone number], or write to the Settlement Administrator at [mailing address]. All papers filed in this lawsuit are also available for review via the Public Access to Court Electronic Records System (PACER), at https://pacer.uscourts.gov, and can be reviewed in person during regular business hours at the U.S. District Court Clerk's Office, United States Courthouse, 700 Stewart Street, Suite 2310, Seattle, WA 98101. Please note that neither Defendants nor any employees, attorneys, or representatives of Defendants may advise you regarding the Settlement or how you should proceed.

## YOUR ROLLOVER OPTIONS

The Settlement Administrator has determined that the payment you are receiving from the Qualified Settlement Fund ("Fund") may be eligible to be rolled over to an IRA or an employer plan. This Q&A is intended to help you decide whether to do such a rollover. This notice describes the rollover rules that apply to payments from the Fund.

## GENERAL INFORMATION ABOUT ROLLOVERS

**How can a rollover affect my taxes?** You will be taxed on a payment from the Fund if you do not roll it over. If you are under age 59½ and do not do a rollover, you will also have to pay a 10% additional income tax on early distributions (generally, distributions made before age 59½), unless an exception applies. However, if you do a rollover, you will not have to pay tax until you receive payments later and the 10% additional income tax will not apply if those payments are made after you are age 59½ (or if an exception to the 10% additional income tax applies).

**What types of retirement accounts and plans may accept my rollover?** You may roll over the payment to either an IRA (an individual retirement account or individual retirement annuity) or an employer plan (a tax-qualified plan, section 403(b) plan, or governmental section 457(b) plan) that will accept the rollover. The rules of the IRA or employer plan that holds the rollover will determine your investment options, fees, and rights to payment from the IRA or employer plan. Further, the amount rolled over will become subject to the tax rules that apply to the IRA or employer plan.

**How do I do a rollover?** There are two ways to do a rollover. You can do either a direct rollover or a 60-day rollover.

**If you do a direct rollover,** the Fund will make the payment directly to your IRA or an employer plan. You should contact the IRA sponsor or the administrator of the employer plan for information on how to do a direct rollover. The information they give you can then be used to complete the Rollover Form. You generally need to have an account opened (even if it's not funded) for an institution to process your rollover.

**If you do not do a direct rollover,** you may still do a rollover by making a deposit into an IRA or eligible employer plan that will accept it. Generally, you will have 60 days after you receive the payment to make the deposit. If you do not do a direct rollover, the Fund is required to withhold 20% of the payment for federal income taxes. This means that, in order to roll over the entire payment in a 60-day rollover, you must use other funds to make up for the 20% withheld. If you do not roll over the entire amount of the payment, the portion not rolled over will be taxed and will be subject to the 10% additional income tax on early distributions if you are under age 59½ (unless an exception applies).

# EXHIBIT B

**Carpenters of Western Washington ERISA Litigation Settlement Administrator**
**[ADDRESS]**
**[www.settlementwebsite.com]**

# ROLLOVER FORM

JOHN Q CLASSMEMBER
123 MAIN ST APT 1
ANYTOWN, ST 12345

Claim Number: 1111111

In order to receive your share of the Settlement by direct rollover to a qualified individual retirement account, Class Members must complete, sign, and mail this form with a postmark on or before [DATE OF FAIRNESS HEARING]. Please review the instructions below carefully. If you have questions regarding this form, you may contact the Settlement Administrator as indicated below:

WWW.SETTLEMENTWEBSITE.COM OR CALL [PHONE NUMBER]

****************************************************************************************************************************

## PART 1: INSTRUCTIONS FOR COMPLETING ROLLOVER FORM

1. If you would like to receive your share of the Settlement by direct rollover to a qualified individual retirement account (commonly called an "IRA") or qualified employer plan (such as a 401(k) plan), please complete this Rollover Form. You should also keep a copy of all pages of your Rollover Form, including the first page with the address label, for your records.

2. **Mail your completed Rollover Form postmarked on or before** [DATE OF FAIRNESS HEARING] **to the Settlement Administrator at the following address:**

   **Carpenters of Western Washington ERISA Litigation Settlement Administrator**
   **P.O. Box [number] [City, State, ZIP]**

   **You also may email a completed, signed copy to [settlement administrator email address]. It is your responsibility to ensure the Settlement Administrator has timely received your Rollover Form.**

3. Other Reminders:

   - You must provide your date of birth, signature, and a completed Substitute IRS Form W-9, which is attached as part 5 to this form.
   - If you desire to do a direct rollover and you fail to complete all of the rollover information in Part 4, below, payment will be made to you by check.
   - If you change your address after sending in your Rollover Form, please provide your new address to the Settlement Administrator.
   - **Timing of Payments to Eligible Settlement Class Members.** The timing of the distribution of the Settlement payments are conditioned on several matters, including the Court's final approval of the Settlement and any approval becoming final and no longer subject to an appeal in any court. An appeal of the final approval order may take several years. If the Settlement is approved by the Court, and there are no appeals, the Settlement distribution likely will occur within four months of the Court's Final Approval Order.

4. **Questions?** If you have any questions about this Rollover Form, please call the Settlement Administrator at [phone number]. The Settlement Administrator will provide advice only regarding completing this form and will not provide financial, tax or other advice concerning the Settlement or your situation. You therefore may want to consult with your financial or tax advisor. Information about the status of the approval of the Settlement and the Settlement administration is available on the settlement website, [www.settlementwebsite.com].

## PART 2: SETTLEMENT CLASS MEMBER INFORMATION

First Name | Middle | Last Name

Mailing Address

City | State | Zip Code

Home Phone | Work Phone or Cell Phone

Participant's Social Security Number | Participant's Date of Birth

M M D D Y Y Y Y

Email Address

**[ROLLOVER FORM CONTINUES ON THE NEXT PAGE]**

## PART 3: BENEFICIARY OR ALTERNATE PAYEE INFORMATION (*IF APPLICABLE*)

☐ Check here if you are the **surviving spouse or other beneficiary** for the Settlement Class Member and the Settlement Class Member is deceased. **Documentation must be provided showing current authority of the representative to file on behalf of the deceased**. Please complete the information below and then continue on to Parts 4 and 5 on the next page.

☐ Check here if you are an alternate payee under a qualified domestic relations order (QDRO). The Settlement Administrator may contact you with further instructions. Please complete the information below and then continue on to Parts 4 and 5 on the next page.

First Name ____________________ Middle ___ Last Name ____________________

Mailing Address ________________________________________

City ____________________ State ____ Zip Code __________

Home Phone ___-___-____ Work Phone or Cell Phone ___-___-____

Participant's Social Security Number ___-__-____ Participant's Date of Birth __-__-____ (M M D D Y Y Y Y)

Email Address ________________________________________

**[ROLLOVER FORM CONTINUES ON THE NEXT PAGE]**

## PART 4: PAYMENT ELECTION

**Direct Rollover to an Eligible Plan** – Check only one box below and complete the Rollover Information Section below:

☐ Government 457(b) ☐ 401(a)/401(k) ☐ 403(b)

☐ Direct Rollover to a Traditional IRA ☐ Direct Rollover to a Roth IRA (subject to ordinary income tax)

**Rollover Information:**

Company or Trustee's Name (to whom the check should be made payable)

Company or Trustee's Mailing Address 1

Company or Trustee's Mailing Address 2

Company or Trustee's City State Zip Code

Your Account Number Company or Trustee's Phone Number

## PART 5: SIGNATURE, CONSENT, AND SUBSTITUTE IRS FORM W-9

UNDER PENALTIES OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA, I CERTIFY THAT ALL OF THE INFORMATION PROVIDED ON THIS ROLLOVER FORM IS TRUE, CORRECT, AND COMPLETE AND THAT I SIGNED THIS ROLLOVER FORM.

1. The Social Security number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to back up withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. person (including a U.S. resident alien).

M M D D Y Y Y Y

**Class Member Signature** **Date Signed *(Required)***

Note: If you are subject to backup withholding, you must cross out item 2 above. The IRS does not require your consent to any provision of this document other than this Form W-9 certification to avoid backup withholding.

# EXHIBIT C

THE HONORABLE JOHN H. CHUN

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

Terrance Johnson, Brent Yahraus, and Jacy Purkiss, individually and as the representatives of a class of similarly situated persons, and on behalf of the Carpenters of Western Washington Individual Account Pension Plan and the Carpenters Retirement Plan of Western Washington,

Plaintiffs,

v.

Carpenters of Western Washington Board of Trustees, Callan LLC, Gerald Auvil, Noe Castillo, Ken Ervin, Jeff Foushee, Kurt Hildebrand, Steve Hoffmann, Martin Holberg, Dan Hutchins, Ryan Hyke, Andrew Ledbetter, Ron Montoya, Jim Osborne, Tim O'Neill, Doug Peterson, Rick Poitras, Danny Robins, Evelyn Shapiro, Bob Susee, Jeff Thorson, Doug Tweedy, and Wilf Wainhouse,

Defendants.

Case Number: 2:22-cv-01079-JHC

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

The above-entitled matter came before the Court on the Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. ECF No. ___. After review of the Unopposed Motion for Preliminary Approval of Settlement and the attachments thereto, the Court **GRANTS** the motion and **ORDERS** as follows.[1]

1. Based on the Court's review, the Court finds, on a preliminary basis that: (1) the Settlement is fair, reasonable, and adequate, and within the range of possible approval; (2) the Settlement has been negotiated in good-faith and at arm's-length, with the assistance of an experienced mediator, between experienced attorneys familiar with the legal and factual issues of this case following substantial discovery; (3) the form and method of the notice of Settlement and Fairness Hearing is appropriate; and (4) the Settlement meets all applicable requirements of law, including Federal Rule of Civil Procedure 23 and applicable Ninth Circuit precedent. Accordingly, the Court preliminarily approves the Settlement Agreement in its entirety.

2. Pursuant to Federal Rule of Civil Procedure 23(b)(1), the Court certifies, for settlement purposes only, the following Settlement Classes:

> All participants and beneficiaries of the IAP at any time from August 2, 2016 to May 7, 2020, excluding Defendants.
>
> All participants and beneficiaries of the Retirement Plan at any time from August 2, 2016 to May 7, 2020, excluding Defendants.

3. Named Plaintiffs Terrance Johnson, Brent Yahraus, and Jacy Purkiss are appointed as the Class Representatives, and Engstrom Lee LLC and Skiermont Derby LLP are appointed as Class Counsel for the Settlement Classes.

4. The Court finds the Plan of Allocation proposed by Class Counsel is fair, reasonable, and adequate. It divides the Net Settlement Amount between the Settlement Classes based on each Plan's balance in the two Allianz funds on December 31, 2019, and allocates each Class's share pro rata based on each member's IAP account balance or Retirement Plan SIB Units on that date.

[1] All defined terms contained herein shall have the same meaning as set forth in the Settlement Agreement executed by the Parties and filed with the Court.



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

5. The Court finds that under Fed. R. Civ. P. 23(c)(2), the proposed Notice of Class Action Settlement and Fairness Hearing (Exhibit A to the Settlement Agreement) constitutes the best notice practicable under the circumstances, provides due and sufficient notice of the Fairness Hearing and of the rights of all Settlement Class Members, and complies fully with the requirements of Fed. R. Civ. P. 23, the Constitution of the United States, and any other applicable law. Specifically, the Court finds that the proposed Notice fairly and adequately provides information to the Settlement Classes regarding, among other things: (1) the nature of the claims asserted in the Action; (2) the scope of the Settlement Classes; (3) the terms of the Settlement Agreement; (4) the process for submitting a Rollover Form, if applicable; (5) Settlement Class Members' right to object to the Settlement and the deadline for doing so; (6) the Settlement Classes' release; (7) the identity of Class Counsel and the amount of compensation they will seek in connection with the Settlement; (8) the date, time, and location of the Fairness Hearing; and (9) Settlement Class Members' right to appear at the Fairness Hearing.

6. Pursuant to the Settlement Agreement, Atticus Administration is hereby appointed as the Settlement Administrator and shall be required to perform all the duties of the Settlement Administrator as set forth in the Settlement Agreement and this Order.

7. The Court approves the establishment of the Qualified Settlement Fund. Atticus Administration shall be the administrator of the Qualified Settlement Fund and shall be responsible for all tax withholding and reporting related to the Qualified Settlement Fund, including for determining whether tax-qualified rollover distributions may be offered to the Settlement Class Members.

8. No later than thirty (30) calendar days after the entry of this Order, the Settlement Administrator shall send by U.S. mail or electronic means the Notice of Class Action Settlement and Fairness Hearing (attached as Exhibit A to the Settlement Agreement) to each Settlement Class Member identified by the Settlement Administrator based upon the data available from Defendants or the Plans' Recordkeeper or information provided by Settlement Class Members. The Settlement Administrator shall use commercially reasonable efforts to locate Settlement



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

Class Members' last known addresses for any who have moved since the last distribution to them from the Plans. Rollover Forms must be postmarked no later than seven (7) days before the Fairness Hearing.

9. In accordance with the Settlement Agreement, the Settlement Administrator also shall establish a Settlement Website and toll-free telephone line relating to the Settlement no later than thirty (30) calendar days following the entry of this Preliminary Approval Order.

10. On [date] at [time] [no sooner than 120 days after Plaintiffs filed their motion for preliminary approval], or at such other date and time later set by Court Order, in Courtroom XX of the United States District Court for the Western District of Washington, United States Courthouse, 700 Stewart Street, Seattle, WA 98101, this Court will hold a Fairness Hearing to determine whether: (a) the Court should approve the Settlement as fair, reasonable, and adequate; (b) the Court should enter the Final Approval Order; and (c) the Court should approve the application for Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses. The Fairness Hearing may be held in person, by telephone, or via videoconference, without further direct notice to the Settlement Class Members, other than by notice to Class Counsel, and/or be adjourned or continued by order of the Court.

11. Any Settlement Class Member may comment in support of or in opposition to the Settlement Agreement. Any objections to any aspect of the Settlement Agreement shall be heard, and any papers submitted in support of said objections shall be considered, by the Court at the Fairness Hearing if they have been filed validly with the Clerk of the Court and copies provided to Class Counsel and Defendants' counsel. To be filed validly, the objection and any notice of intent to participate or supporting documents must be filed or postmarked at least twenty-one (21) calendar days prior to the scheduled Fairness Hearing. The comment and/or objection also must: (1) clearly identify the case name and number of this Action; (2) include the Settlement Class Member's full name, current address, and telephone number; (3) describe the position the Settlement Class Member wishes to assert, including the factual and legal grounds for the position; (4) provide copies of all documents that the Settlement Class Member wishes to submit



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

in support of the Settlement Class Member's position; (5) provide the name(s), address(es) and phone number(s) of any attorney(s) representing the Settlement Class Member; and (6) include the Settlement Class Member's signature. Any Person wishing to speak at the Fairness Hearing shall file, with copies provided to Class Counsel and Defendants' counsel, a notice of intent to participate at least twenty-one (21) calendar days before the Fairness Hearing.

12. Any party may file a response to an objection by a Class Member at least seven (7) calendar days before the Fairness Hearing.

13. Any Settlement Class Member who fails to object in the manner prescribed herein shall be deemed to have waived such Settlement Class Member's objections and shall forever be barred from making any such objections in this Action or in any other action or proceeding.

14. Any application for Attorneys' Fees and Costs, Class Representative Service Awards, and Administrative Expenses shall be filed no later than thirty (30) calendar days prior to the deadline for objections to the proposed Settlement.

15. No later than thirty (30) calendar days before the objection deadline, Class Counsel shall file papers in support of Final Approval of the Settlement Agreement. No later than 7 calendar days before the Fairness Hearing, Class Counsel shall file any objections received, together with any response.

16. Pending final determination of whether the Settlement Agreement should be approved, no Settlement Class Member may directly, through representatives, or in any other capacity, commence any action or proceeding in any court or tribunal asserting any of the Released Claims against Defendants, the Released Parties, and/or the Plans. Except as necessary to effectuate this Order, all proceedings and deadlines in this matter are stayed and suspended pending the Fairness Hearing and issuance of the Final Order, or until further order of this Court.

17. The Court approves the CAFA Notice attached as Exhibit E to the Settlement Agreement and orders that upon mailing of the CAFA Notice, Defendants shall have fulfilled their obligations under CAFA.

18. In the event the Settlement Agreement and the proposed Settlement are terminated



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

in accordance with the applicable provisions of the Settlement Agreement or otherwise not finally approved by the Court, the Settlement Agreement, the proposed Settlement, and all related proceedings shall, except as expressly provided to the contrary in the Settlement Agreement, become null and void, shall have no further force and effect, and Settlement Class Members shall retain all of their current rights to assert any and all claims against Defendants and any other Released Party, and Defendants and any other Released Parties shall retain any and all of their current defenses and arguments thereto. This Action shall revert to its procedural and substantive status prior to the date of execution of the Settlement Agreement and shall proceed as if the Settlement Agreement and all other related orders and papers had not been executed.

19. Neither this Order nor the Settlement Agreement nor any other settlement-related document nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement or in any other settlement-related document, shall constitute, be construed as or be deemed to be evidence of or an admission or concession by Defendants as to the validity of any claim that has been or could have been asserted against them or as to any liability by them as to any matter set forth in this Order.

It is so ORDERED this ___ day of __________________, 2026.

_________________________
Honorable John H. Chun
United States District Judge



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

Terrance Johnson, Brent Yahraus, and Jacy Purkiss, individually and as the representatives of a class of similarly situated persons, and on behalf of the Carpenters of Western Washington Individual Account Pension Plan and the Carpenters Retirement Plan of Western Washington,

Plaintiffs,

v.

Carpenters of Western Washington Board of Trustees, Callan LLC, Gerald Auvil, Noe Castillo, Ken Ervin, Jeff Foushee, Kurt Hildebrand, Steve Hoffmann, Martin Holberg, Dan Hutchins, Ryan Hyke, Andrew Ledbetter, Ron Montoya, Jim Osborne, Tim O'Neill, Doug Peterson, Rick Poitras, Danny Robins, Evelyn Shapiro, Bob Susee, Jeff Thorson, Doug Tweedy, and Wilf Wainhouse,

Defendants.

Case Number: 2:22-cv-01079-JHC

**[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT**



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

The above-entitled matter came before the Court on the Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement. ECF No. ___. After review of the Unopposed Motion for Final Approval of Settlement and the attachments thereto, the Court **GRANTS** the motion and **ORDERS** as follows.[1]

1. The Court has jurisdiction over the subject matter of this action and personal jurisdiction over all parties to this action, including all members of the Settlement Classes.

2. The Court confirms its certification, for settlement purposes only, of the following Settlement Classes:

> All participants and beneficiaries of the IAP at any time from August 2, 2016 to May 7, 2020, excluding Defendants.
>
> All participants and beneficiaries of the Retirement Plan at any time from August 2, 2016 to May 7, 2020, excluding Defendants.

3. The Court finds that the Settlement Classes meet all of the requirements of Rules 23(a) and 23(b)(1).

4. Pursuant to Rule 23(e)(2), the Court hereby approves the Settlement of the Released Claims covered by this Settlement Agreement and finds the terms of the Settlement Agreement to be fair, reasonable, and adequate to the Plans and the Settlement Class Members.

5. The Court hereby orders that the Settling Parties take all necessary steps to effectuate the terms of the Settlement Agreement.

6. The Court hereby finds that under Fed. R. Civ. P. 23(c)(2) the Notice of Class Action Settlement and Fairness Hearing constituted the best notice practicable under the circumstances and that due and sufficient notice of the Fairness Hearing and the rights of all Settlement Class Members has been provided.

7. In accordance with the Court's Orders, and as reflected in the information from the Settlement Administrator, Atticus Administration, Notices of Class Action Settlement and Fairness Hearing were timely distributed by U.S. mail or electronic means to all Settlement Class

[1] All defined terms contained herein shall have the same meaning as set forth in the Settlement Agreement executed by the Parties and filed with the Court.



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

Members who could be identified with reasonable effort. The Settlement Administrator searched for updated address information for those returned as undeliverable, and re-mailed notices to those Settlement Class Members. In total, __% were ultimately returned as undeliverable. In addition, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1711, *et seq*. ("CAFA"), notice was provided to the Attorneys General for each of the states in which a Settlement Class Member resides and the Attorney General of the United States.

8. The Court finds that the Settlement is fair, reasonable, and adequate, based on the following findings of fact, conclusions of law, and determinations of mixed fact/law questions.

A. The Settlement resulted from arm's-length negotiations by experienced and competent counsel;

B. The Settlement was negotiated only after Class Counsel had engaged in substantial discovery, the Court decided dispositive motions, and the Ninth Circuit decided an appeal;

C. The Settling Parties were well positioned to evaluate the value of the Class Action;

D. If the Settlement had not been achieved, both Plaintiffs and Defendants faced the expense, risk, and uncertainty of extended litigation;

E. The amount of the Settlement ($9,250,000.00) is fair, reasonable, and adequate. The Settlement amount is within the range of reasonable settlements that would have been appropriate in this case, based on the nature of the claims, the potential recovery, the risks of litigation, and settlements that have been approved in other similar cases;

F. The Class Representatives have actively and independently participated in the Class Action;

G. The Class Representatives and Class Counsel have concluded that the Settlement Agreement is fair, reasonable and adequate;

H. Settlement Class Members had the opportunity to be heard on all issues



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

regarding the Settlement and release of claims by submitting objections to the Settlement Agreement to the Court;

I. There were _____ objections to the settlement. _____ of those objections were timely. The Court has considered all of them, and they do not affect the Court's determination that the Settlement is fair, reasonable, and adequate. Accordingly, the Court overrules them; and

J. The Settlement was reviewed by an independent fiduciary, ______, who has approved the Settlement.

9. The Motion for Final Approval of the Settlement Agreement is hereby GRANTED, the Settlement of the Class Action is APPROVED as fair, reasonable and adequate to the Plans and the Settlement Classes.

10. This Class Action and all Released Claims asserted therein whether asserted by Class Representatives on their own behalf or on behalf of the Class Members, or on behalf of the Plans, are hereby dismissed with prejudice, without costs to any of the Settling Parties other than as provided for in the Settlement Agreement.

11. The Plans and each Class Member (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns) shall be (a) conclusively deemed to have, and by operation of the Final Order shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged the Released Parties from all Released Claims; and (b) barred and enjoined from suing the Released Parties in any action or proceeding alleging any of the Released Claims.

12. Each Class Member shall release the Released Parties, Defense Counsel, and Class Counsel for any claims, liabilities, and attorneys' fees and expenses arising from the allocation of the Gross Settlement Amount or Net Settlement Amount, any calculations that are part of the allocation and distribution process of the Settlement, and for all tax liability and associated penalties and interest as well as related attorneys' fees and expenses.

13. The releases, waivers, and covenants set forth in the Settlement Agreement shall



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

apply even if any Class Member may thereafter discover facts in addition to or different from those which the Class Members or Class Counsel now know or believe to be true with respect to the Class Action and the Released Claims, whether or not such Class Members receive a monetary benefit from the Settlement, whether or not such Class Members actually received the Settlement Notice, whether or not such Class Members have filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Costs, and whether or not the objections or claims for distribution of such Class Members have been approved or allowed.

14. The Court finds that all applicable CAFA requirements have been satisfied.

15. The Court awards attorneys' fees to Class Counsel in the amount of $3,083,333.33 (equal to one-third of the Gross Settlement Amount) is reasonable. The Court further finds that reimbursement of litigation expenses and costs in the amount of $[--], payment to Atticus Administration in the amount of $[--] for Settlement Administration expenses, and payment to [Independent Fiduciary] in the amount of $[--] is likewise reasonable.

16. To Class Representatives Terrance Johnson, Brent Yahraus, and Jacy Purkiss, the Court awards Class Representative Service Awards of $10,000 each.

17. The Plan of Allocation is approved. The Settlement Administrator shall have final authority to determine the share of the Net Settlement Amount to be allocated to each Class Member in accordance with the Plan of Allocation approved by the Court.

18. With respect to any matters that arise concerning the implementation of distributions to Class Members who are current participants in the Plans, or the implementation of Supplemental SIB Credits or Retirement Plan Cash Payments to Retirement Plan Class Members (after allocation decisions have been made by the Settlement Administrator in its sole discretion), all questions not resolved by the Settlement Agreement shall be resolved by the Plans' administrator(s) or other fiduciaries of the Plans, in accordance with applicable law and the governing terms of the Plans.

19. Within thirty (30) calendar days following the issuance of all settlement payments



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

to Class Members as provided by the Plan of Allocation approved by the Court, the Settlement Administrator shall prepare and provide to Class Counsel and Defense Counsel a list of each Person who received a settlement payment or contribution from the Qualified Settlement Fund and the amount of such payment or contribution.

20. Upon entry of this Order, all Settling Parties, the Settlement Classes, and the Plans shall be bound by the Settlement Agreement and by this Final Approval Order.

21. The Court shall retain jurisdiction to enforce the Settlement Agreement, over the Qualified Settlement Fund, and to resolve any dispute that may arise regarding the Notice of Class Action Settlement and Fairness Hearing, the Final Approval Order, or any other matters relating thereto.

22. The Clerk is directed to enter final judgment consistent with this Order. Fed. R. Civ. P. 58.

It is so ORDERED this ___ day of __________________, 2027.

__________________________
Honorable John H. Chun
United States District Judge



**ENGSTROM LEE**
323 N. WASHINGTON AVE., STE. 200
MINNEAPOLIS, MN 55401
TEL: 612-305-8349

# EXHIBIT E

October __, 2026

**<u>VIA FEDERAL EXPRESS/USPS PRIORITY MAIL</u>**

To: Federal and State Officials Under 28 U.S.C. § 1715(b)
(See Distribution List Attached)

Re: CAFA Notification of the Proposed Settlement in *Johnson, et al. v. Carpenters of Western Washington Board of Trustees, et al.*, 2:22-cv-01079-JHC (W.D. Wash. filed August 2, 2022)

This notification is being sent to you on behalf of all Defendants in the above-captioned matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b), to inform you of a proposed class action settlement between Plaintiffs and Defendants.

**<u>Court</u>:** United States District Court for the Western District of Washington

**<u>Case Caption</u>:** *Johnson, et al. v. Carpenters of Western Washington Board of Trustees, et al.*, 2:22-cv-1079 (W.D. Wash. filed August 2, 2022)

**<u>Defendants</u>:** Carpenters of Western Washington Board of Trustees, Callan LLC, Gerald Auvil, Noe Castillo, Ken Ervin, Jeff Foushee, Kurt Hildebrand, Steve Hoffmann, Martin Holberg, Dan Hutchins, Ryan Hyke, Andrew Ledbetter, Ron Montoya, Jim Osborne, Tim O'Neill, Doug Peterson, Rick Poitras, Danny Robins, Evelyn Shapiro, Bob Susee, Jeff Thorson, Doug Tweedy, and Wilf Wainhouse

**<u>Documents Enclosed</u>:**

The following documents include those required by 28 U.S.C. § 1715(b)(1), (3), and (4), which are enclosed with this letter:

- Complaint, filed August 2, 2022 (Dkt. No. 1)
- Amended Complaint, filed October 28, 2022 (Dkt. No. 82)
- Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, filed on October 13, 2026 (Dkt. No. __), which includes:
    - Plaintiffs' Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. No. __);
    - Declaration of Paul B. Derby in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. No. __);

- o Declaration of Mark E. Thomson in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. No. __);
- o Class Action Settlement Agreement, filed October 13, 2026, with exhibits including proposed class notice, proposed rollover form, proposed preliminary approval order, proposed final approval order, and proposed CAFA notice (Dkt. No. __).

**Additional Information:**

As required by 28 U.S.C. § 1715(b)(2), we inform you that the Court has not scheduled a hearing on Plaintiffs' motion for preliminary approval of the settlement, a fairness hearing, or any other motions hearing related to the settlement of this action.

As required by 28 U.S.C. § 1715(b)(3)(ii), we inform you that Settlement Class members do not have a right to request exclusion from the class action pursuant to the terms of the Settlement Agreement.

As required by 28 U.S.C. § 1715(b)(5), we inform you that Class Counsel and Counsel to Defendants have made no settlement or other agreement contemporaneously with the Class Action Settlement Agreement.

As required by 28 U.S.C. § 1715(b)(6), we inform you that no final judgment or notice of dismissal has been entered.

As required by 28 U.S.C. § 1715(b)(7)(A) and (B), we inform you that there are two sub-classes which may overlap in their membership. Based on information currently available to Defendants, there are more than 20,000 members in the first sub-class and more than 21,000 members in the second sub-class. It is not feasible at this time to provide the names of class members residing in each state, a reasonable estimate of the number of class members residing in each state, or the estimated proportionate share of the claims of the class members residing in each state to the entire settlement. However, please be advised that, upon final approval by the Court, the settlement proceeds will be distributed among the settlement class members according to the methodology and formulas set forth in the Plan of Allocation.

As required by 28 U.S.C. § 1715(b)(8), we inform you that to date, the Court has not issued a written judicial opinion related to the Class Action Settlement between Plaintiffs and Defendants.

Further information regarding this matter, including any future scheduled judicial hearings, may be obtained by visiting the "PACER" online docket for the above-referenced case at https://ecf.wawd.uscourts.gov/cgi-bin/ShowIndex.pl.

If you have questions about this notice, the litigation, or the enclosed materials, please contact the following counsel for Defendants:

William J. Delany

GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., NW
Washington, D.C. 20006
Telephone: (202) 861-6643
wdelany@groom.com

*Counsel to Defendants Carpenters of Western Washington Board of Trustees, Gerald Auvil, Noe Castillo, Ken Ervin, Jeff Foushee, Kurt Hildebrand, Steve Hoffmann, Martin Holberg, Dan Hutchins, Ryan Hyke, Andrew Ledbetter, Ron Montoya, Jim Osborne, Tim O'Neill, Doug Peterson, Rick Poitras, Danny Robins, Evelyn Shapiro, Bob Susee, Jeff Thorson, Doug Tweedy, and Wilf Wainhouse*

Brian Benjet
DLA PIPER LLP (US)
One Liberty Place
1650 Market Street, Ste 5000
Philadelphia, Pennsylvania 19103
Telephone: (215) 656-3311
brian.benjet@dlapiper.com

*Counsel to Defendant Callan LLC*

Regards,

William J. Delany

Enclosures

| DISTRIBUTION LIST | |
|---|---|
| Attorney General of the United States<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001 | Attorney General of Alaska<br>1031 West 4th Avenue, Suite 200<br>Anchorage, AK 99501-1994 |
| Attorney General of Alabama<br>501 Washington Avenue<br>Montgomery, AL 36104 | Attorney General of Arkansas<br>323 Center Street, Suite 200<br>Little Rock, AR 72201-2610 |
| Attorney General of Arizona<br>2005 N. Central Ave.<br>Phoenix, AZ 85004-2926 | CAFA Coordinator<br>Office of the Attorney General<br>Consumer Protection Section<br>455 Golden Gate Ave., Suite 11000<br>San Francisco, CA 94102 |
| Attorney General of Colorado<br>Ralph L. Carr Colorado Judicial Center<br>1300 Broadway, 10th Floor<br>Denver, CO 80203 | Attorney General of Connecticut<br>165 Capitol Avenue<br>Hartford, CT 06106 |
| Attorney General of Delaware<br>Delaware Department of Justice<br>820 N. French Street<br>Wilmington, DE 19801 | Attorney General<br>of the District of Columbia<br>400 6th Street, NW<br>Washington, D.C. 20001 |
| Attorney General of Florida<br>PL-01 The Capitol<br>Tallahassee, FL 32399-1050 | Attorney General of Georgia<br>40 Capitol Square, SW<br>Atlanta, GA 30334-1300 |
| Attorney General of Hawaii<br>425 Queen Street<br>Honolulu, HI 96813 | Attorney General of Iowa<br>Hoover State Office Building<br>1305 E. Walnut Street<br>Des Moines, IA 50319 |
| Attorney General of Idaho<br>700 W. Jefferson Street, Suite 210<br>Boise, ID 83720-1000 | Attorney General of Illinois<br>James R. Thompson Center<br>100 W. Randolph Street<br>Chicago, IL 60601 |

| | |
|---|---|
| Attorney General of Indiana<br>Indiana Government Center South – 5th Floor<br>302 West Washington Street<br>Indianapolis, IN 46204 | Attorney General of Kansas<br>120 S.W. 10th Ave., 2nd Fl.<br>Topeka, KS 66612-1597 |
| Attorney General of Kentucky<br>Capitol Building, Suite 118<br>700 Capital Avenue<br>Frankfort, KY 40601 | Attorney General of Louisiana<br>P.O. Box 94005<br>Baton Rouge, LA 70804 |
| Attorney General of Massachusetts<br>ATTN: CAFA Coordinator/<br>General Counsel's Office<br>1 Ashburton Place, 20th Floor<br>Boston, MA 02108 | Attorney General of Maryland<br>200 St. Paul Place<br>Baltimore, MD 21202-2202 |
| Attorney General of Maine<br>State House Station 6<br>Augusta, ME 04333 | Attorney General of Michigan<br>525 W. Ottawa Street, P.O. Box 30212<br>Lansing, MI 48909 |
| Attorney General of Minnesota<br>445 Minnesota Street, Suite 1400<br>St. Paul, MN 55101 | Attorney General of Missouri<br>207 West High Street, P.O. Box 899<br>Jefferson City, MO 65102 |
| Attorney General of Mississippi<br>P.O. Box 220<br>Jackson, MS 39205 | Attorney General of Montana<br>215 N. Sanders<br>Helena, MT 59620-1401 |
| Attorney General of North Carolina<br>9001 Mail Service Center<br>Raleigh, NC 27699-9001 | Attorney General of Nebraska<br>2115 State Capitol, P.O. Box 98920<br>Lincoln, NE 68509 |

| | |
|---|---|
| Attorney General of Nevada<br>555 E. Washington Ave., Suite 3900<br>Las Vegas, NV 89101<br>(Sent to NVAGCAFAnotices@ag.nv.gov) | Attorney General of New Hampshire<br>33 Capitol Street<br>Concord, NH 03301 |
| Attorney General of New Jersey<br>RJ Hughes Justice Complex<br>25 Market Street, P.O. Box 080<br>Trenton, NJ 08625-0080 | Attorney General of New Mexico<br>408 Galisteo Street<br>Santa Fe, NM 87501 |
| Attorney General of New York<br>CAFA Coordinator<br>28 Liberty Street, 15th Floor<br>New York, NY 10005 | Attorney General of North Dakota<br>600 E. Boulevard Ave., Dept. 125<br>Bismarck, ND 5805-0040 |
| Attorney General of Ohio<br>30 E. Broad Street, 14th Floor<br>Columbus, OH 43266 | Attorney General of Oklahoma<br>313 NE 21st Street<br>Oklahoma City, OK 73105 |
| Attorney General of Oregon<br>1162 Court Street, NE<br>Salem, OR 97301 | Attorney General of Pennsylvania<br>Strawberry Square, 16th Floor<br>Harrisburg, PA 17120 |
| Attorney General of Puerto Rico<br>Apartado 9020192<br>San Juan, PR 00902-0192 | Attorney General of Rhode Island<br>150 S. Main St.<br>Providence, RI 02903 |
| Attorney General of South Carolina<br>P.O. Box 11549<br>Columbia, SC 29211 | Attorney General of South Dakota<br>1302 East Highway 14, Suite 1<br>Pierre, SD 57501-8501 |
| Attorney General of Tennessee<br>P.O. Box 20207<br>Nashville, TN 37202-0207 | Attorney General of Texas<br>P.O. Box 12548<br>Austin, TX 78711-2548 |

| | |
|---|---|
| Attorney General of Utah<br>P.O. Box 142320<br>Salt Lake City, UT 84114-2320 | Attorney General of Virginia<br>202 North Ninth Street<br>Richmond, VA 23219 |
| Attorney General of Vermont<br>109 State Street<br>Montpelier, VT 05609-1001 | Attorney General of Washington<br>1125 Washington St. SE<br>P.O. Box 40100<br>Olympia, WA 98504-0100 |
| Attorney General of Wisconsin<br>State Capitol, Room 114 East<br>P.O. Box 7857<br>Madison, WI 53707-7857 | Attorney General of West Virginia<br>State Capitol Complex, Bldg. 1, Room E-26<br>1900 Kanawha Blvd., East<br>Charleston, WV 25305 |
| Attorney General of Wyoming<br>109 State Capitol<br>Cheyenne, WY 82002 | |